## Hettie R. Hapenny, Appellee, v. J. T. Huffman and Frank Wilson, Appellants.

1. INTOXICATING LIQUORS, § 251*—*when instruction in words of statute misleading on question of damages.* In an action by a widow under section 9 of Dramshop Act, J & A. ¶ 4609, to recover damages for loss of means of support by death of her husband alleged to have been caused by the sale of intoxicating liquors by the defendants, an instruction given for plaintiff setting out a portion of the statute *held* misleading as permitting plaintiff to recover all damages sustained, there being no instruction given limiting plaintiff's recovery to the loss to her means of support or informing the jury what was the proper measure of damages in the case.

2. INTOXICATING LIQUORS, § 245*—*when verdict for loss of widow's means of support is excessive.* Verdict for five thousand dollars for loss of widow's means of support resulting from death of husband caused by sale of intoxicating liquors, *held* excessive, the evidence showing that the deceased was a tenant farmer, selling some years about twelve hundred dollars of produce from his farm, and when not occupied with farm work doing teaming at three dollars per day for himself and team.

Appeal from the Circuit Court of Mason county; the Hon. GUY R. WILLIAMS, Judge, presiding. Heard in this court at the April term, 1913. Reversed and remanded. Opinion filed October 16, 1913. Rehearing denied November 5, 1913.

THOMAS D. MASTERS, E. P. NISCHWITZ, W. H. NELMS and ALFRED ADAMS, for appellants.

CLARENCE W. HEYL and LYMAN LACEY, JR., for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action on the case brought by Hettie R. Hapenny against J. T. Huffman and Frank Wilson, partners doing business under the name of Wilson & Huffman, to recover damages for an injury sustained to her means of support in consequence of the death of her husband, Daniel Hapenny.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

The first count of the declaration avers that the defendants sold and gave intoxicating liquors to one J. I. Reed, thereby causing the intoxication, in whole or in part, of said Reed, and thereupon the said Reed, while so intoxicated, drove an automobile in which the said Reed and Daniel Hapenny, the husband of plaintiff, were riding in such a careless and dangerous manner as to cause said automobile, while running at a dangerous speed, to turn over, thereby killing said Hapenny.

The third count avers the sale by the defendants to J. I. Reed of intoxicating liquors causing his intoxication, and by reason of said intoxication the said Reed was in such a mental condition as to be unable to appreciate danger from physical causes, and that the said Reed, while in such condition, invited said Daniel Hapenny to ride in an automobile driven by said Reed, and the said Hapenny, while riding in said automobile driven by said Reed while so intoxicated, was killed by the said automobile, being in consequence of such intoxication, operated in such a dangerous manner that it was overturned, etc.

The fifth count avers that defendant sold and gave intoxicating liquors to Daniel Hapenny causing his intoxication, and by reason of such intoxication said Hapenny was unable to perceive danger from physical causes, and while so intoxicated and in consequence of such intoxication the said Hapenny was thrown from said automobile and killed. A jury returned a verdict for plaintiff for five thousand dollars, on which judgment was rendered and the defendants appeal.

The evidence shows that Daniel Hapenny was a farmer, twenty-six years of age, who farmed an eighty-acre farm as a tenant about four miles from San Jose, Mason county, Illinois. The appellee is twenty-seven years of age, and she and Hapenny had been married five years. J. I. Reed, who is a farmer and stock buyer living about one and a half miles from San Jose, started about ten o'clock in the forenoon of October 21, 1911, in an automobile, which he had had about six

weeks, with his brother Kenneth Reed and Wm. Lux, from San Jose to Manito, near where Reed was going to look at a farm. When passing the farm of Hapenny, J. I. Reed inquired of Hapenny, if he had any hogs for sale. After some talk Hapenny got into the automobile with Reed and they went to Manito, where they arrived about noon. J. I. Reed there entered the saloon of appellants, he says, for the purpose of telephoning to the country. His companions also entered the saloon, where J. I. Reed bought drinks for the others. Reed testified, as do his companions, that he did not drink any liquor that day. They also testify that Reed, when asked to drink, said he would not touch liquor but that he took cigars and gave as a reason therefor that he was driving the car. There is some evidence, however, tending to show that Reed while in the machine acted like an intoxicated person. It began to rain soon after they got to Manito. In consequence of the rain Reed did not go to visit the farm, but stayed in the saloon of defendants until about one o'clock, when they started home. About four and a half miles from Manito the car was upset killing Hapenny and injuring J. I. Reed. On the way from Manito the car appears to have "zigzagged" more or less across the road, and where the accident happened it turned a complete somersault, alighting on its wheels. The defendants claim that the accident was caused either by the machine skidding on a muddy road and striking a wet place which had been filled with gravel at a place where the beaten track, which the driver of the machine was attempting to follow, crossed from one side of the road to the other, or by both causes combined, and that the steering gear of the machine broke rendering the machine uncontrollable, while on the part of appellee it is insisted that the irregular movements of the car and its overturning were caused by the manner and the speed at which it was run by an intoxicated driver. It is contended on the part of appellants that a clear preponderance of the evidence shows that the

parties were not intoxicated, but since the case must be reversed for other reasons and on another trial there may be additional evidence, we will not discuss the weight of the evidence or the merits of the case.

It is insisted that the court erred in giving the following instruction at the request of the appellee: "The Court instructs the jury in this case, that the section of the statutes of the State of Illinois, upon which this suit is founded is in part, as follows, to-wit:

"Every husband, wife, child, parent, guardian, employer or other person, who shall be injured in means of support, in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication in whole or in part, of such person or persons, for all damages sustained, and a married woman shall have the same right to bring suits and to control the same, and the amount recovered, as a feme sole; and all suits for damages under this act may be by any appropriate action in any court of this State having competent jurisdiction."

This instruction pretends to be a copy of the statute. Section 9 of the Dramshop Act (J. & A. ¶ 4609) is as follows: "Every husband, wife, child, parent, guardian, employer or other person, who shall be injured in *person or property,* or means of support, *by any intoxicated person* or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons; *and any person owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, or who have leased the same for other purposes, shall knowingly permit therein the sale of*

*any intoxicating liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person or persons selling or giving intoxicating liquors aforesaid* for all damages sustained, and *for exemplary damages;* and a married woman shall have the same right to bring suits and to control the same and the amount recovered, as a feme sole; *and all damages recovered by a minor under this act shall be paid either to such minor, or to his or her parent, guardian or next friend, as the court shall direct and the unlawful sale or giving away, of intoxicating liquors shall work a forfeiture of all rights of the lessee or tenant, under any lease or contract of rent upon the premises where such unlawful sale or giving away shall take place;* and all suits for damages under this act may be by any appropriate action in any of the courts of this State having competent jurisdiction.''

In *Colesar v. Star Coal Co.* 255 Ill. 532, it was said: ''Generally speaking, when a party, in an instruction offered, purports to quote verbatim a provision of the statute he must quote it correctly or the instruction must be refused.'' In *Baker & Reddick v. Summers,* 201 Ill. 52, an instruction in the language of the statute, with the *ad damnum* in the declaration added, was condemned because it made no other reference to the case and did not require proof of facts creating a liability. The provisions of section 9 of the Dramshop Act (J. & A. ¶ 4609) give a wife, who shall be injured in person or property or means of support by an intoxicated person, or in consequence of the intoxication of any person, a right of action against any person, who shall by selling or giving intoxicating liquors have caused the intoxication, in whole or in part, of such person or persons for all damages sustained. The appellee did not sustain any damages to her person or property, but only to her means of support. The words of the statute which are italicized are omitted from the instruction. The instruction as given is misleading since it tells the jury that appellee was

entitled to recover all damages sustained, and is not limited to damages sustained to her means of support. The right of action in this character of cases is purely statutory, and a jury was very liable to construe the instruction as giving the right to all damages which the estate of deceased, or the appellee, sustained by his death. All damages might be understood to include the probable increase of his estate, her mental suffering, and the loss of companionship of her husband. The giving of this abstract instruction was reversible error, when the record shows that no instruction was given limiting the damages to the loss to her means of support or informing the jury what was the proper measure of damages in the case.

It is also contended that the damages assessed are excessive. The deceased was a tenant farmer. The evidence shows that he sold some years about twelve hundred dollars worth of produce from his farm and that when not occupied with farm work he occasionally worked at teaming at three dollars per day for himself and team; only his gross income was shown by the evidence. The appellee contributed her services in the work ordinarily done on a farm by a farmer's wife. If her husband was killed in consequence either of his own intoxication or of the intoxication of the driver of the machine and the appellants, by selling and giving intoxicating liquor, materially contributed to such intoxication, and such intoxication was the proximate cause of the death of her husband, then she is entitled to recover whatever damages she has sustained to her means of support. In view of the habits, earnings and income of appellee's husband, the judgment appears to be excessive. For the reasons pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*