# HUBERT DRIESSEN v. FRED MOENING AND OTHERS.
## MARY ERICKSON v. SAME.[1]

October 4, 1940.

Nos. 32,503, 32,504.

*Theodore F. Neils* and *Charles H. Richter,* for appellants. *Donohue, Quigley & Donohue* and *Ahles & Ahles,* for respondents.

JULIUS J. OLSON, JUSTICE.

Appeals from orders denying plaintiffs' separate blended motions for amended findings or new trial bring for review two suits involving identical issues. Consolidated for trial below, they are similarly submitted here.

The relief wanted was a mandatory injunction compelling defendants to remove a dam claimed to have been wrongfully constructed at the outlet of Little Birch Lake in Stearns county, and for damages for flooding their farm lands which

[1]Reported in 294 N. W. 206.

abut upon it. The precise question, so plaintiffs say, here to be determined, is whether a release executed by them to the state, "but not to respondents, relieved the defendants who constructed the dam from any liability in this case."

The facts found may be thus summarized: There is a chain of three lakes lying in the counties of Todd and Stearns. Little Birch Lake at its lower extremity extends into Stearns county and below it, also in Stearns county, is Lake Sylvia. At the outlet of Little Birch is a channel connecting it with Sylvia. In 1930 a dam was constructed in this channel by the state through the agency of the game and fish department under an agreement with the county board of Stearns county, each to pay half the costs of the dam. The construction of that dam led to litigation and is discussed in Erickson v. County of Stearns, 190 Minn. 433, 252 N. W. 219. That dam was later (190 Minn. 434, 252 N. W. 220) "entirely blown out." Interest on the part of shore owners upon Little Birch and upper Big Birch Lakes and others led to voluntary contributions being made to build or rebuild the old dam upon its former location in October, 1934. The present dam, like the one before it, caused waters to be backed up in the channel and in the lake so that damages resulted to plaintiffs. That is conceded. Were it not for a release executed by plaintiffs to the state in October, 1936, then plaintiffs' causes would necessarily have to be sustained.

By legislative act, L. 1935, c. 392, § 73, plaintiff Driessen was granted $400 "for damages sustained on account of the construction by the Game and Fish Department of the State of Minnesota of a dam at the outlet of Little Birch Lake in Stearns County." And by § 74, plaintiff Erickson's predecessor in interest was awarded a like amount but with a proviso that the director of the game and fish department might refuse to pay the claim "and in any action brought thereon shall be entitled to interpose any legal or equitable

defenses thereto, and shall not be required to pay such claim nor any part thereof except as may be duly adjudged in said action."

The rebuilt dam had been in existence since October, 1934, more than six months prior to the mentioned enactment. (It was approved April 29, 1935.) After this enactment much in the way of negotiation was had and a considerable amount of correspondence took place between counsel for plaintiffs and the game and fish department. Thus we find that on October 3, 1935, the department wrote him that "we are ready to deliver vouchers on these claims but it will first be necessary for these men to give a flowage easement to this department covering the lands, so that we will not be subjected to any future claims on their part. They will also be required to sign releases for any damage to their property which has been sustained up to the present time." Counsel for plaintiffs replied thereto (October 11) claiming that the legislative appropriation only covered damages caused by the dam as constructed in 1930. On October 15 the department again wrote him saying that "when the legislature allows a claim for damages of this sort the allowance covers past, present and future damages, and we have always required flowage easements when any money is paid on such claims." And further, "we cannot pay" these claims "without receiving a flowage easement, unless, of course, we are ordered to do so by the courts. It has been the policy of this department to require such claims to be settled once and for all so that the department will not be bothered in the future by additional demands from the same claimants." Finally, on October 13, 1936, about two years after the construction of the dam complained of, a release was executed by plaintiffs under the terms of which they released the state, its division of game and fish, the department of conservation and its "officers, agents, servants and successors and assigns from any and all liability for damages caused by

the construction and maintenance of any and all dams, dykes and other works, at, on, or near Little Birch Lake and from any and all liability and damages past, present, prospective or future arising from the raising, maintenance, use, regulation or control of said waters or by any temporary flooding of said waters at times of high water, whatsoever, that may be attributed [to] or inferred as being caused by the construction of such dams or any and all dams as aforesaid." The release further provided that, "all the provisions hereof shall run with the land and shall extend to and bind the heirs, representatives, successors and assigns of the respective parties hereto." The game and fish department thereupon vouchered plaintiffs' claims, and these were duly paid by the state and the proceeds are retained by plaintiffs.

■ The motion for new trial was based solely upon the claim "That the conclusions of law as found by the court are not justified by the findings of fact." Of course counsel for plaintiffs well know that insofar as the order denies amended findings it is not appealable. While it may be the ground of an assignment of error, it does not sustain an appeal. Hoyt v. Kittson County State Bank, 180 Minn. 93, 94, 230 N. W. 269.

■ The findings, in addition to what has already been recited (see paragraph 4) say:

"That subsequent to the construction of said dam [the 1934 dam] the plaintiff [Driessen] herein for a valuable consideration made, executed and delivered to the State * * * a written release * * * wherein and whereby in consideration of the sum of Four Hundred Dollars ($400.00)" he released the state and its several departments "representing the public" from all "liability for damages caused by the construction and maintenance of any and all dams, dikes, and other works" at this place, and released the state and the public "from any and all liability for damages,

past, present, prospective or future, arising from the raising, maintenance, use, regulation or control of the waters" in the mentioned lake; that the release "is effective and operates against the plaintiff for all damages by reason of any dam heretofore constructed at the outlet," and that it "is binding upon the plaintiff," who "having received compensation for all of such damages and injuries and liability * * * cannot now again recover damages for the acts complained of in his complaint."

(The same finding in substance was also made in the Erickson case.) Upon this finding, together with the other facts recited, the court concluded that the cause should be dismissed on its merits and with prejudice with costs to defendants.

Thus, plaintiffs have received *quid pro quo* for their asserted wrongs. There is no claim of fraud, overreaching, or mistake in reference to the settlement and release. Plaintiffs were represented by competent and alert counsel in this entire proceeding. So it does not now lie in their mouths to say that they should recover again for the same harm or wrong from these defendants or anyone else. Each plaintiff as "an injured party who has accepted satisfaction, 'from whatever source it may come,' cannot recover again for the same injury." Smith v. Mann, 184 Minn. 485, 486, 239 N. W. 223. Here as in that case the release (184 Minn. 488, 239 N. W. 224) "operated not only in personam on the releasees and their liability, but also in rem on the releasor's cause of action. The decisive thing now is not whether plaintiff actually released this defendant, or intended to do so, or got full compensation, but rather and only whether she has discharged her whole cause of action. * * * The entire cause of action being gone, no one can remain liable." (The opinion cites cases supporting the quoted text.)

In that case, as well as many others, the release or satisfaction related to personal injuries rather than property

damage, but in principle there can be no distinction. If there be any it should operate more favorably to plaintiffs in personal injury actions than to property damage claims. Each order is affirmed.