VIOLET HARTWIG, GUARDIAN AD LITEM OF DAVID LEE HARTWIG, A MINOR, AND ANOTHER v. THE LOYAL ORDER OF MOOSE, BRAINERD LODGE NO. 1246, AND OTHERS.

91 N. W. (2d) 794.

August 8, 1958—Nos. 37,188, 37,189, 37,190, 37,191, 37,192, 37,193, 37,298, 37,299.

348.

*F. C. Schroeder,* for appellant Brainerd Aerie No. 287, Fraternal Order of Eagles.

*Nolan & Alderman,* for appellant Loyal Order of Moose, Brainerd Lodge No. 1246.

*Fitzpatrick & Larson,* for appellant Western Surety Company.

*John J. Sexton* and *Thomas J. Burke,* for appellant Carl Sidney Hanson Post 255, American Legion.

*Ryan, Ryan & Ebert,* for respondents.

NELSON, JUSTICE.

The plaintiff, Violet Hartwig, instituted two actions under the Civil Damage Act, M. S. A. 340.95, one in her own behalf and the other as guardian ad litem of David Lee Hartwig, a minor, naming in each case as defendants The Loyal Order of Moose, Brainerd Lodge No. 1246, a corporation; Brainerd Aerie No. 287 Fraternal Order of Eagles, a corporation; Carl Sidney Hanson Post 255 American Legion, a corporation; and Western Surety Company, a corporation.

These cases were consolidated for trial with other cases which are not involved in the appeal. The cases were tried before the district court with a jury and submitted on special verdicts. The jury found that one Emil Hellen was intoxicated at the time of the collision; that the intoxication of Emil Hellen caused the death of Lee Hartwig, husband of Violet Hartwig and father of David Lee Hartwig, a minor; and that each of the defendants named caused or contributed to Emil Hellen's intoxication; that Violet Hartwig had suffered damages in means of support, pursuant to the remedies afforded under § 340.95, in the amount of $18,000; and that David Lee Hartwig had suffered damages in means

of support, also pursuant to § 340.95, in the amount of $10,000. One of the special questions submitted to the jury was the following: "What was the fair and reasonable amount of medical and hospital bills necessarily incurred for care and treatment of Lee Hartwig on account of said accident?" The jury answered the question by inserting the figure of $5,170.10. The court thereafter ordered judgment for $18,000 plus $5,170.10 for Violet Hartwig and judgment for $10,000 for David Lee Hartwig. Motions for judgments notwithstanding the verdicts or in the alternative for a new trial were made by defendants excepting the Legion, whose motion was for judgment notwithstanding the verdict, and all motions were denied.

The verdicts appear to be based upon the following facts: On April 25, 1955, an automobile driven by one Earl Mondor was driven off the highway and into a pole. That accident occurred about 2½ miles south of Brainerd on Highway No. 371. Subsequently a wrecker operated by Lee Hartwig was sent by the highway patrol to pull Mondor's car from the scene. While Lee Hartwig was engaged in connecting to the Mondor car, one Emil Hellen, driving a pickup truck, collided with the wrecker inflicting injuries on Lee Hartwig which caused his death 2 months later.

The collision between the pickup truck and the wrecker occurred in the early morning of April 25, 1955. Hellen had been in Brainerd on April 24, a Sunday. He was at that time 64 years old. He had attended church in the morning returning to his son's home where he visited until about 8 p. m. that evening. Sunday night he first went to the Eagles' clubrooms.

Called as a witness in behalf of the plaintiff, Emil Hellen testified as follows:

"Q. Were you a member of the Eagles?

"A. Yes, sir.

"Q. And did you have anything to drink that evening at the Eagles' Club Room?

"A. I had two drinks up there, I believe.

"Q. What kind of drinks?

"A. They were whiskey and sour.

"Q. Was that all the drinks you had at the Eagles'?

"A. That's all I had up there."

After testifying as to what he did during the period he spent at the Eagles' clubrooms, he stated that he left there somewhere between 9 and 9:30 p. m. to go to the Moose clubrooms less than one-half block away. He testified further as follows:

"Q. And were you a member of the Moose Lodge also?

"A. Yes, sir.

"Q. And did you have any intoxicating liquor at the Moose Lodge?

"A. I had about three drinks up there.

"Q. You say about three drinks?

"A. Well, three.

"Q. And what sort of drinks were those?

"A. They were the same—whiskey and sour.

"Q. And who bought those drinks?

"A. Who bought those drinks?

"Q. Did you buy those drinks?

"A. Yes, sir.

"Q. And how long were you at the Moose Lodge?

"A. Oh, I would say until about twelve or a little after twelve."

He testified that about midnight he went from the Moose Lodge rooms to the American Legion clubrooms together with three others referred to in the testimony. His testimony continued as follows:

"Q. Were you a member of the Legion?

"A. No, sir.

"Q. Did you have anything to drink at the Legion?

"A. I did.

"Q. And how long were you there?

"A. I would say about an hour.

"Q. And do you remember how many drinks approximately you had at the Legion?

"A. I had two drinks at the Legion.

"Q. And what sort of drinks were these?

"A. The same, whiskey and sour.

"Q. And what time was it when you left the Legion Club Rooms?

"A. I would say about one o'clock, closing up."

On cross-examination by counsel for the Moose he was asked the following questions and gave the following answers:

"Q. And you had nothing to drink at your son's home?

"A. No, I didn't.

"Q. And your first drink that evening then was at the Eagles?

"A. At the Eagles', yes, ma'am."

On cross-examination by counsel for the American Legion he was asked the following questions and gave the following answers:

"Q. When you arrived at the American Legion Club House was your son there?

"A. Yes, sir.

"Q. Did he give you these drinks that you spoke of?

"A. No, he bought it for me; he was not tending bar.

"Q. He bought them for you?

"A. Yes.

"Q. And gave them to you?

"A. Yes, sir."

On further redirect he was asked the following questions and gave the following answers:

"Q. Did you, Mr. Hellen, buy any drinks at the Legion?

"A. No, I did not.

"Q. Pardon?

"A. No, I did not.

"Q. Is it your testimony that your son bought both of these drinks for you?

"A. No, my son bought one and someone else bought the other one; I don't know who it was.

"Q. You have no idea who it was that bought the second drink?

"A. No, I don't.

"Q. No recollection at all?

"A. No, I never paid no attention, but the drink was setting on the bar, and that's all I know about it."

Hellen said that he left the American Legion about 1:30 a. m. and started for home in his pickup truck and that he became involved in the collision with the wrecker operated by Lee Hartwig en route.

Most of plaintiff's evidence was directed to the circumstances surrounding the accident and to the fact question whether Mr. Hellen was intoxicated at the time of the accident. The defendants offered to prove through the witness Violet Hartwig that in a prior action, as trustee for the next of kin of Lee Hartwig, she had recovered $17,500 from Emil Hellen. The trial court refused to allow the defendants to show the prior recovery in the wrongful death action. The record discloses that it was admitted by plaintiff Violet Hartwig that in a prior action a full recovery had been made for hospital and medical expenses in connection with the death of Lee Hartwig. These amounted to the sum of $5,170.10. All of the defendants objected to admitting evidence of these expenses on the ground: (1) That they are not recoverable in this type of action; (2) that they were recovered in a prior action; and (3) that there was no evidence that Violet Hartwig had paid or was liable for them.

Mr. Emil Hellen was only called as a witness for plaintiffs. The defendants all contend that there was no direct testimony in the case that any one as bartender, agent, or representative of the defendants furnished, sold, or gave intoxicating liquor to Mr. Hellen, illegally or otherwise, so as to render these defendants liable under the Civil Damage Act. Over the strenuous objection of the defendants, however, the trial court permitted plaintiffs to introduce a written statement which had been procured from Mr. Hellen by a highway patrolman who had appeared at the scene of the accident. This statement was unsworn, but its use was permitted to impeach uncontradicted testimony previously given by Mr. Hellen. The exhibit was received in evidence as a part of the examination by plaintiffs' counsel of their witness Earl Saign of the state highway patrol, who had taken the statement in question from Emil Hellen, but as against the Eagles only. It is contended by defendants that this limitation meant nothing; that the exhibit was inadmissible and highly prejudicial and was used in the closing argument by plaintiffs' counsel not only against the Eagles but against all of the other defendants, and particularly the Moose, against whom it had

not been admitted. The record indicates that timely objection had been made on the ground that it was incompetent, irrelevant, immaterial, and hearsay, and that no proper foundation therefor had been laid.

In regard to the loss of means of support, Violet Hartwig testified that her husband had various employment during their marriage and that at the time of his death he operated a wrecking business, mail service, and ambulance service. Several exhibits were offered to show earnings including tax withholding statements for the years 1944 through 1949 and Federal tax returns from 1949 through 1954. There was testimony that the husband was in good health in April 1955 and that he had supported his wife and son. The testimony also showed that in 1953 and 1954, while Lee Hartwig operated a filling station, his tax return showed a loss of $2,669.35 and $3,135.29, respectively.

The record indicates that in his argument to the jury plaintiff's counsel, in asking for damages, three times injected into the proceeding the claim for medical bills for which admittedly recovery had been had in the prior action. Exceptions thereto were taken by all defendants.

Reviewing the assignments of error of the several defendants, it would appear that the following legal questions are involved: (1) Does the evidence sustain a finding by the jury that the defendants furnished intoxicating liquor to Emil Hellen on the evening prior to the occurrence of the accident? (2) It being elementary that the plaintiffs had the burden of proving that there was an illegal sale or furnishing of intoxicants, did they sustain the burden of proof so as to entitle them to a factfinding that either of the defendants illegally furnished, sold, or gave intoxicating liquor to Emil Hellen on the evening in question causing or contributing to his intoxication? (3) Where there has been a prior recovery in a wrongful death action under § 573.02 of medical and hospital bills incurred as a result of the same accident or collision, may these expenses be recovered again in an action under the Civil Damage Act, § 340.95? (4) Are the defendants or any of them foreclosed from showing the prior recovery in the wrongful death action in mitigation or reduction of the damages sought in the separate and later actions brought under the Civil Damage Act? (5) Is a written, unsworn statement made by plaintiffs' witness outside of court admissible on behalf of plaintiffs to impeach testimony that plaintiffs' witness

has previously given where such witness was not adverse, plaintiff was not taken by surprise, and no proper foundation had been laid? (6) Did the trial court commit error with respect to the statement of controlling principles in the course of giving its instructions to the jury?

■ In this case, as in every case where a jury's verdict is reviewed, the appellate court is obliged to give the verdict the benefit of every reasonable inference which may properly be drawn to its support from the evidence as a whole.

■ It is elementary that before plaintiffs are entitled to recover in these cases they must show by competent proof that defendants or any of them unlawfully furnished intoxicating liquor to Emil Hellen which caused or contributed to his intoxication and that the same was a proximate cause of the injuries to Lee Hartwig which resulted in his death. The illegality claimed in the instant cases is that the alleged furnishing or sale of intoxicating liquor to Hellen ocurred on Sunday, April 24, 1955, or in the early morning of April 25, 1955, which, if true, would be in violation of § 340.14.

■ We will consider first the question whether, where there has been a prior recovery based upon the accident from a third party (Emil Hellen in this case) in a wrongful death action brought under § 573.02 of medical and hospital bills incurred, a recovery may be supported upon the same items in an action under the Civil Damage Act, and further whether the defendants are foreclosed from showing the full extent of the prior recovery. The Civil Damage Act, § 340.95, reads:

"Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; and all damages recovered by a minor under this section shall be paid either to such minor or to his parent, guardian, or next friend, as the court directs; and all suits for damages under this section shall be by civil action in any court of this state having jurisdiction thereof."

We held in Adamson v. Dougherty, 248 Minn. 535, 81 N. W. (2d)

110, that prior recovery from third party for damage sustained would foreclose plaintiffs' right to collect again under § 340.95, except where it would appear from the evidence that the judgment obtained in the wrongful death action did not constitute full compensation for damages recoverable under the Civil Damage Act. We also held in that case that in an action under the Civil Damage Act plaintiff had the burden of establishing that damage for which compensation was sought had been a proximate result of illegal sale of intoxicants. The conclusion was reached that (248 Minn. 544, 81 N. W. [2d] 116):

"It would follow that plaintiffs are not foreclosed on the issues now presented and therefore that the trial court did not err in striking defendant's fourth defense. In the trial hereof, both parties may present such evidence as they may have at their disposal, including that submitted in the prior action, so that all such issues may properly be determined at that time."[1]

 This court in the Adamson case said (248 Minn. 542, 81 N. W. [2d] 114):

"As above indicated the Mayes and Philips cases, cited in Beck v. Groe, *supra,* involved construction of M. S. A. 1941, § 340.12(4), rather than § 340.95. The language of the Beck case to the effect that a suit under the Civil Damage Act is a means to impose a penalty on a dealer of intoxicating liquor was used to indicate that the defenses of contributory negligence or lack of guilty knowledge are not available in an action for damages under § 340.95; but not, as plaintiff suggests, to determine that this section was other than compensatory in nature.

"Other decisions relating to § 340.95, which refer to its penal characteristics, at the same time point out that its principal objective is

---

[1]M. S. A. 340.95, the Civil Damage Act of this state, has been construed by this court as to various questions that have arisen in connection with the act's application in Beck v. Groe, 245 Minn. 28, 70 N. W. (2d) 886, 52 A. L. R. (2d) 875; Hahn v. City of Ortonville, 238 Minn. 428, 57 N. W. (2d) 254; Fox v. Swartz, 228 Minn. 233, 36 N. W. (2d) 708; Philips v. Aretz, 215 Minn. 325, 10 N. W. (2d) 226; Mayes v. Byers, 214 Minn. 54, 7 N. W. (2d) 403, 144 A. L. R. 821; Sworski v. Colman, 204 Minn. 474, 283 N. W. 778; Fest v. Olson, 138 Minn. 31, 163 N. W. 798.

the imposition of liability for damages caused by the intoxication of any person upon the dealer, who, by illegally selling intoxicating liquors, caused such intoxication. Hahn v. City of Ortonville, 238 Minn. 428, 57 N. W. (2d) 254; Fox v. Swartz, 228 Minn. 233, 36 N. W. (2d) 708. The necessary implication to be drawn therefrom is that, as in other damage actions, a claimant's prior recovery of the damages thus sustained would foreclose his right to again collect therefor under § 340.95; Driessen v. Moening, 208 Minn. 356, 294 N. W. 206; Almquist v. Wilcox, 115 Minn. 37, 131 N. W. 796; and that upon such a claimant would rest the burden of establishing that his damages were the proximate result of the illegal sale. * * *

"This conclusion would not, of course, bar plaintiff from establishing that the judgment recovered in the wrongful death action did not constitute full compensation for the damages recoverable under § 340.95; or from establishing the right to recover to the extent of the penalty provided for under § 340.12 in line with our decision in Philips v. Aretz, 215 Minn. 325, 10 N. W. (2d) 226. In this connection it is to be noted that the maximum recovery permitted under M. S. A. 1949, § 573.02, at the time of the accident was the sum of $10,000, while under § 340.95, there is no limitation as to the amount that may be recovered for loss of support. Likewise, the prior action was instituted for the benefit of the widow and funeral creditors of the decedent, as well as for his minor heirs, whereas the present action was instituted for the sole benefit of the latter. Such factors, of course, may have some bearing in determining whether plaintiff already has been fully compensated for the damages claimed herein. De Lude v. Rimek, 351 Ill. App. 466, 115 N. E. (2d) 561; Larabell v. Schuknecht, 308 Mich. 419, 14 N. W. (2d) 50."

■ Plaintiffs herein are therefore entitled to but one satisfaction of the loss which they have suffered in their means of support. Thus, the amount of their prior recovery in the action brought to recover under the Wrongful Death Act may be shown so that the jury may, under proper instructions, determine to what extent, if any, the plaintiffs have already been compensated for the damages claimed in their action under § 340.95. Since our Civil Damage Act is penal in nature and

because the remedy provided thereby is compensation for damages, it is nevertheless in that aspect a remedial statute. Also see, De Lude v. Rimek, 351 Ill. App. 466, 115 N. E. (2d) 561; Larabell v. Schuknecht, 308 Mich. 419, 14 N. W. (2d) 50.

■ Plaintiffs contend that the defense of a prior recovery was new matter which the defendants were required to plead affirmatively, and because they have not done so, it is not available as a defense, and furthermore that the alleged defense of prior payment in whole or in part has been affirmatively pleaded in the Adamson case.

The record does not disclose that any such objection was raised by the plaintiffs at the time the evidence as to prior recovery was offered by defendants. In Merriam v. Pine City Lbr. Co. 23 Minn. 314, this court said that: "A defective pleading, clearly amendable in the discretion of the trial court, cannot be taken advantage of in this court by a party who had an opportunity to make his objection to it in the court below, but omitted so to do." Potter v. Potter, 224 Minn. 29, 27 N. W. (2d) 784; Segerstrom v. Holland Piano Mfg. Co. 142 Minn. 104, 170 N. W. 930; Getty v. Village of Alpha, 115 Minn. 500, 133 N. W. 159.

As to construction on appeal, it has been held that when the sufficiency of a pleading is questioned for the first time on appeal it will be sustained if by any reasonable inference or intendment a cause of action or defense can be spelled out of the matters alleged. The pleading will be sustained if the defect is of such a nature that it might have been remedied by an amendment in the trial court. See, 2 Mason's Dunnell, Minn. Practice, § 3239, and cases therein cited.

■ We are concerned here with unliquidated claims for damages. Matter in mitigation of damages need not be specially pleaded, but may be shown under a general denial. 1 Pirsig, Minn. Pleading (4 ed.) § 1387, and cases cited.

■ We think the broad denials contained in the answers of the defendants do raise the issue of the amount of damages suffered by the plaintiffs. See, Lund v. Gillman, 205 Minn. 242, 285 N. W. 534. The matter of showing plaintiffs' prior recovery goes to the measure of damages. It is not a defense matter. It has been recognized as a rule of pleading in this state that matter in mitigation of damages, at least

when it could not be used as a bar to plaintiffs' cause of action, need not be pleaded. We are concerned in the realm of unliquidated damages wholly with matters of proof and not of pleading. Plaintiffs are required to prove the amount of unliquidated damages even though they have not been denied in the answer in order that they may be properly assessed. A general denial puts in issue every allegation in the pleading which it denies. Hoxsie v. Empire Lbr. Co. 41 Minn. 548, 43 N. W. 476; Pullen v. Wright, 34 Minn. 314, 26 N. W. 394; Hoyt v. Duluth & Iron Range R. Co. 103 Minn. 396, 115 N. W. 263; Jellett v. St. Paul, M. & M. Ry. Co. 30 Minn. 265, 15 N. W. 237; Murphy v. Barlow Realty Co. 206 Minn. 537, 289 N. W. 567; 1 Pirsig, Minn. Pleading (4 ed.) §§ 1387, 1388; 15 Dunnell, Dig. (3 ed.) §§ 7572, 7573b, 7574, 7578a, and cases cited; 27 Minn. L. Rev. 318, 319, and cases cited.

This court in the Adamson case discussed the defense interposed to the effect that plaintiff had been fully compensated for the damages suffered by reason of the prior action, and in the course of the opinion said that this conclusion would not bar plaintiff from establishing that the judgment recovered in the wrongful death action did not constitute full compensation for the damages recoverable under the Civil Damage Act or from establishing the right to recover to the extent of the penalty provided for under § 340.12.[2] We reach the conclusion that the trial court committed reversible error in refusing defendants the right to show the prior recovery of medical, hospital, and funeral expenses and the amount of the general recovery.

■ The defendants contend that the trial court erred in admitting into evidence an unsworn written statement signed by the witness Emil Hellen, which statement was taken from Hellen sometime after the accident by Patrolman Earl Saign, and that the court also erred in refusing to strike the exhibit on motion of defendants. It is clear from an examination of the statement that it differs materially from the testimony given at the trial by Emil Hellen, who was plaintiffs' witness and

[2]See, Hapenny v. Huffman, 184 Ill. App. 351; Smith v. Mann, 184 Minn. 485, 239 N. W. 223; Driessen v. Moening, 208 Minn. 356, 294 N. W. 206; Gronquist v. Olson, 242 Minn. 119, 64 N. W. (2d) 159.

who does not appear to have been classified as an adverse witness. Clearly counsel for the plaintiff claimed no surprise and made no attempt to lay a foundation for the admission of this statement for purposes of impeachment. When the statement was offered in evidence defendants Moose and Legion objected strenuously to its admission, and defendant Eagles was permitted to inquire further for the purpose of making its objection. Following such inquiry, timely objection was made by the Eagles. It was received in evidence but only against the Eagles Lodge. It was immediately read to jury by plaintiff's counsel. While there had previously been inquiry regarding the time and the methods by which the statement was obtained for the purposes of making an objection to it, there had been no inquiry by defendants as to the contents of the statement. Counsel for plaintiffs used the statement in the argument to the jury generally against all the defendants, although its admission had been limited in its application to the Eagles Lodge only.

Recently in Fieve v. Emmeck, 248 Minn. 122, 132, 78 N. W. (2d) 343, 350, this court said:

"While it is true that counsel, in arguing a case to the jury, is to be given much latitude, and that ordinarily 'comments of counsel in the closing arguments on properly received evidence * * * [are] never error' it does not follow that where evidence is received for a specific purpose that it can then be used in argument for some other purpose wholly foreign to the limited purpose for which it was received to the prejudice of a litigant."

We think the applicable law well settled. The following statement may be found in 20 Dunnell, Dig. (3 ed.) § 10356:

"* * * It is the general rule that a party cannot impeach a witness whom he has called by proof of contradictory statements out of court. * * * If a party is surprised by the adverse testimony of his own witness he may be permitted by the court, in the exercise of its discretion, to impeach the witness by proof of contradictory statements, a proper foundation being laid."

The rules applicable to the right to impeach a party's own witness are

adequately stated in the former decisions of this court. Price v. Grieger, 244 Minn. 466, 70 N. W. (2d) 421; State v. Lemke, 207 Minn. 35, 290 N. W. 307; State v. Saporen, 205 Minn. 358, 285 N. W. 898; Witort v. Chicago & N. W. Ry. Co. 170 Minn. 482, 212 N. W. 944; Fjellman v. Weller, 213 Minn. 457, 7 N. W. (2d) 521; Selover v. Bryant, 54 Minn. 434, 56 N. W. 58, 21 L. R. A. 418; Young v. United States (5 Cir.) 97 F. (2d) 200, 117 A. L. R. 316; 3 Wigmore, Evidence (3 ed.) § 904(3). While the statement here would add little, if anything, to prove plaintiffs' claim that defendants had actually made a sale of intoxicating liquor to Hellen, we, nevertheless, come to the conclusion that under all the circumstances disclosed by the record its admission constituted prejudicial error.

Based upon the evidence upon which plaintiffs rely for their proof that the defendants were engaged in activities violative of the provisions of § 340.14, the most that can be said for plaintiffs' position is that their right to recover is a close if not a doubtful question. The burden of proof rests upon plaintiffs. That other more convincing evidence has not been made available cannot be charged to the defendants. Hellen was a local member of both the Eagles and Moose lodges. There is in the record no direct testimony that either of the bars was open for business except to dispense 3.2 beer on Sunday night April 24, 1955; no testimony as to any club representative or bartender dispensing liquor over or from the bar, or otherwise; and no evidence as to who such offending persons, employees, or bartenders were or how and when they committed such violations. Local members might well have purchased mix at either of the bars and proceeded to supply liquor from their own private stocks or pocket flasks. The record would indicate that there was no dearth of responsible membership at either lodge or club on the night in question. No doubt such members possessed the requisite knowledge acquired from their presence on that occasion to come forward upon being duly served with a subpoena and to testify to the facts, obviating the necessity of depending upon inference drawn wholly from circumstantial evidence. Circumstantial evidence may help to establish the essential fact, but there must be evidence from which it reasonably may be inferred that the essential fact did exist. Commenting upon a somewhat similar situation in Strand

v. Village of Watson, 245 Minn. 414, 424, 72 N. W. (2d) 609, 616, this court said:

"* * * Claiming surprise, plaintiff was permitted to impeach his testimony by showing prior contrary statements, but, even assuming that the jury discarded the testimony of Martinson entirely, the best that can be said is that Martinson was intoxicated at the time of the accident. While the evidence of illegal sale in this case is far from convincing, we think that it is sufficient so that, coupled with a proper instruction to the jury, it presented a fact question.

"It seems clear that the jury was confused about the distinction between the proof required here and in an ordinary case involving the unlawful operation of a motor vehicle while under the influence of intoxicating liquor."

That there is a distinction between being under the influence of intoxicating liquors and being intoxicated is made clear in the Strand case. We approved the definition of intoxication used by the trial court in that case as being probably as good as any. Since the Civil Damage Act must be strictly construed, the definition as to intoxication ought to be limited to that term and attempting any explanation of the term "under the influence of intoxicating liquor" avoided unless it becomes necessary at some time before the verdict is rendered to explain to the jury the difference in the application of those terms. The trial court here made it clear that each plaintiff had the burden of proving by fair preponderance of the evidence:

"1. That at the time of this accident Emil Hellen was intoxicated. That is one thing they must prove.

"2. That one or more of the licensees sold Emil Hellen intoxicating liquor which was a cooperating, concurring, or proximately contributing cause of Emil Hellen's intoxication, and

"3. Emil Hellen's intoxication was a proximate cause of Lee Hartwig's death."

The definition as to when a person in the contemplation of the law is intoxicated ought not to be confused with that state which would be sufficient to find that the buyer here, if liquor had been sold to him,

was under the influence of intoxicating liquor as that term is defined in our traffic laws. Care ought to be exercised in that respect both in the reception of the evidence and the instructions to the jury so that they may not arrive at a verdict on a wrong concept of the applicable law. Both the Strand case and the Adamson case chart the procedural course under the Civil Damage Act.

Defendants contend that the trial court should not have read § 340.941, applicable to sale by an employee, for the reason that there is no evidence in the record indicating that any clerk, barkeeper, or other employee of either of the defendants furnished or sold liquor to Hellen. As we see it this statute would necessarily have to be given in case there was evidence that any clerk, barkeeper, or other employee of either of the defendants sold liquor at the time in question to Hellen and we therefore conclude that if the trial court under the circumstances committed any error in that respect it constituted harmless error. The best that can be said from the testimony here is that there is some evidence that Hellen was intoxicated at the time of the accident and not merely under the influence of intoxicating liquor. Being under the influence of intoxicating liquor at the time of the occurrence of the accident would not, standing alone, answer the requirements of § 340.95, which must be strictly construed.[3] Suffice it to say that the evidence of illegal sale in this case is not as convincing as might be desired, especially in view of the fact that the record indicates and suggests that some evidence of a direct nature ought to be available on the question of whether any clerk, barkeeper, or other employee of either of the defendants sold or furnished liquor to Hellen at the times in question prior to the accident.

In Barich v. Pennsylvania Fire Ins. Co. 191 Minn. 628, 255 N. W. 80, a verdict was directed for plaintiff for the damages which had been liquidated, with interest, and the propriety of that peremptory

---

[3]In Schulte v. Schleeper, 210 Ill. 357, 360, 71 N. E. 325, 326, the Illinois court said:

"The Dram-shop act is highly penal in its character. It provides remedies unknown to the common law, and we have invariably held that it should be strictly construed, and that a plaintiff must bring himself clearly within its terms."

instruction for plaintiff was challenged on appeal. This court said in that case that the fire's being of incendiary origin was established but that the burden of proving that plaintiff was guilty of arson was upon the defendant; that (191 Minn. 629, 255 N. W. 80):

"* * * We agree with the learned trial judge that the evidence, wholly circumstantial, was insufficient to sustain that burden as matter of law. * * *

"Without so deciding, we assume that a fact issue was made by evidence as to whether one or more members of defendant's family were guilty, or at least had guilty knowledge, of the cause of the fire. Even so, there is no evidence to connect plaintiff with the arson. That conclusion, essential to the success of defendant, is at best left in the realm of speculation. * * *

* * * * *

"* * * Defendant did not make a prima facie case. Instead of having the aid of any presumption, its claim was opposed by the presumption of defendant's innocence. So in order to get to the jury defendant had to do more than show some circumstances consistent with its claim that plaintiff was the incendiary. Mitton v. Cargill Elev. Co. 124 Minn. 65, 144 N. W. 434. * * * As matter of law its defense was not sustained unless plaintiff's complicity was indicated by the evidence to such an extent as to support a reasonable inference of his guilt. Failing in that as it did, the evidence was not inconclusive but, on the contrary, conclusive against defendant for the simple reason that upon it was the burden of proof. Circumstances which merely create suspicion but do not justify affirmative and reasonable deduction are not enough to sustain decision against the negative."[4]

The fact cannot be escaped that much of plaintiffs' proof is circumstantial in the instant cases. In considering the circumstantial evidence we are necessarily guided by the rule stated in Manteuffel v. Theo.

---

[4]See, Wunsewich v. Olson, 137 Minn. 98, 162 N. W. 1054, 2 A. L. R. 560; Wilson v. Hayes, 40 Minn. 531, 42 N. W. 467, 4 L. R. A. 196; White v. State ex rel. Huff, 183 Ind. 649, 109 N. E. 905; 20 Am. Jur., Evidence, § 221; 30 Am. Jur., Intoxicating Liquors, § 561; 48 C. J. S., Intoxicating Liquors, § 465.

Hamm Brg. Co. 238 Minn. 140, 145, 56 N. W. (2d) 310, 314:

"* * * It was not necessary for the plaintiff to exclude every other reasonable hypothesis by the circumstantial evidence which she introduced, but a jury may not be permitted to guess as between two equally persuasive theories consistent with the circumstantial evidence. The evidence must be something more than consistent with the plaintiff's theory of how the accident occurred. Reasonable minds functioning judicially must be able to conclude from the circumstances that the theory adopted by the verdict outweighs and preponderates over any other theory." See, Smock v. Mankato Elks Club, 203 Minn. 265, 266, 280 N. W. 851, 852.

We have carefully reviewed all the errors assigned on these appeals. Since we have concluded that there must be a new trial, it would serve no good purpose to consider other assignments. So far as defendant Western Surety Company is concerned its position in the matter is governed by § 340.12 in the event that the plaintiffs prevail against the defendants at another trial. The maximum possible liability of Western Surety Company to both plaintiffs on any one of its bonds is limited to $3,000. Once this amount has been paid to any plaintiff by the defendant Western Surety Company as surety for any licensee, the full obligation under the bond issued to that licensee becomes exhausted. It is clear from the record here that the Western Surety Company was at the time of the occurrence of the accident here involved the surety on three separate liquor bonds issued by it to each of the other defendants. These are separate bonds, constitute separate contracts, and liability attaches to the surety company on each bond only as each respective licensee is held liable to plaintiffs.

While the plaintiffs are not required to prove causal connection by direct evidence only, the circumstantial evidence relied upon must be consistent to the extent that it furnishes a reasonable basis for supporting an inference by the jury of the ultimate fact that the alleged illegal furnishing or sale of liquor by the defendants was the cause of Hellen's alleged intoxication and thus furnish sufficient proof of an

existing causal connection to sustain a verdict.[5]

Reversed and a new trial granted to all defendants on all issues.

---

[5]For cases furnishing illustrations of instances where circumstantial evidence, not too persuasive, was held to justify an inference that the accident was proximately caused by the negligence proven, see Mitton v. Cargill Elev. Co. 124 Minn. 65, 71, 144 N. W. 434, 436.