**Thomas KNESE, as Trustee for the Heirs and Next of Kin of Michael Knese, Decedent, Appellant,**

**v.**

**Jim HEIDGERKEN, d.b.a. Shortstop Bar, Respondent,**

**Fred Zollner, d.b.a. Fred's Bar, Defendant.**

**No. C7–84–926.**

Court of Appeals of Minnesota.

Nov. 27, 1984.

John E. Mack, New London, for appellant.

Gordon Hansmeier, St. Cloud, for respondent.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Following trial to the court of an action brought under the Minnesota Civil Damages Act, the court determined that the plaintiff had not proved the respondent made an illegal sale of liquor. The plaintiff appeals from the judgment entered in favor of the defendant. We affirm.

## FACTS

On June 23, 1979, Michael Knese, a minor, was killed when the truck which he was driving went off the road into the ditch and flipped over. Upon learning that Michael's blood alcohol content at the time of the accident was .16, his father brought this lawsuit against the defendant Shortstop Bar and the defendant Fred's Bar, claiming that they had illegally sold liquor to his son and had thereby caused his son's death. Fred's Bar was dismissed prior to trial.

At trial the plaintiff introduced testimony by two young men who were in the car at the time of the accident and who had spent the afternoon with Michael. The boys testified that on the afternoon of the accident they had been riding around in Richmond, Minnesota with Michael in his truck, and at his suggestion had gone to St. Martin where Michael "knew he could get some beer." They pooled their money and Michael drove to the defendant Shortstop Bar, arriving there at some time between 4:00 and 5:00 p.m. Michael went into the bar through the back door, apparently having no trouble getting in. He came out after a few minutes with a case of beer which he put in the truck, and the boys drove off. They drove around for several hours drinking the beer, went to Paynesville to wash the truck, and then drove to Lake Koronis where they drank more of the beer. The accident occurred as Michael was driving back to Richmond at approximately eight o'clock that evening.

The defendant Jim Heidgerken, who owned the Shortstop Bar, an employee of the Shortstop Bar, and a friend of Heidgerken testified for the defense. They all agreed that the Shortstop Bar was not open on the afternoon of the accident because the employee who usually worked on Saturdays was helping with a church bazaar that day, and Heidgerken was playing softball. It was not until 6:15 or 6:30 p.m., after the softball game had ended, that Heidgerken opened the bar.

There were three entrances to the Shortstop Bar, and it was possible that one of the doors could have been unlocked on the day of the accident, although the bar was not open for business. Heidgerken testified:

> Once in awhile, you know, in the evenings, especially on Friday nights, somebody will take the key. And I have the keys in the door, and try to get the people out. And I only had one key, so off and on the bar did stay open that night; the back door off and on, too. The beer truckers go in and out, and, then, they forget to lock it.

When Heidgerken opened the bar on the evening in question, he had no way of

knowing whether a case of beer was missing, and did not notice any signs of a forced entry.

After considering the above testimony, the trial court found that the plaintiff had not proved an illegal sale of liquor. In a memorandum attached to its order, the court explained:

> Plaintiff, of course, had the burden of satisfying the Court that it was more likely than not that there had been an illegal sale. It was obvious from the testimony that Michael Knese acquired a case of beer in St. Martin on the afternoon of his death. It is more likely than not that it was acquired from the premise of the Defendant's bar; however, there was no evidence that there was a sale, or that the bar was open at the time. In fact, it appeared that it was more likely than not that the bar was closed and not open for business at the time the beer was acquired.

Judgment was entered in favor of the defendant Shortstop Bar and the plaintiff appealed.

### ISSUE

Did the trial court erroneously conclude that the plaintiff had failed to prove an illegal sale of liquor?

### ANALYSIS

■ The evidence submitted at trial supports the trial court's conclusion that the plaintiff failed to prove the bar was open on the day of the accident. Heidgerken testified that the bar was not open, a witness testified that Heidgerken was playing softball at the time the beer was obtained, and Heidgerken's employee testified that he did not work that day. None of the plaintiff's witnesses testified that the bar was open; one of the witnesses merely testified that he saw Michael go into the bar and come out with the beer.

Although the evidence does not establish that the bar was open for business, the plaintiff argues that the defendant's negligence in leaving the bar door open requires a determination that a "sale" of liquor in

effect occurred. The plaintiff claims, in effect, that public policy, together with a liberal interpretation of the Civil Damages Act, requires a finding of liability in this instance.

The Civil Damages Act on June 23, 1979, provided in part:

> Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by *illegally selling or bartering* intoxicating liquors, caused the intoxication of such person, for all damages, sustained * * *

Minn.Stat. § 340.95 (1978) (emphasis supplied). As the emphasized language indicates, the Act requires a "sale" or "barter" of liquor before liability may be imposed. The statute had previously included the word "giving"; however, that word was deleted by the legislature in 1977. 1977 Minn.Laws ch. 390, § 1.

■ Because the Civil Damages Act is remedial, where its language is clear it must be liberally construed "so as to suppress the mischief and advance the remedy," *Beck v. Groe*, 245 Minn. 28, 34, 70 N.W.2d 886, 891 (1955). However, because the Act is also penal in nature and has no counterpart in the common law, its provisions "cannot be enlarged by construction beyond the meaning given in clear and explicit terms." *Fitzer v. Bloom*, 253 N.W.2d 395, 402 (Minn.1977), *citing Hartwig v. The Loyal Order of Moose, Brainerd Lodge No. 1246*, 253 Minn. 347, 91 N.W.2d 794 (1958) and *Beck v. Groe*. In the present situation the phrase "selling or bartering" is clear, and should not be enlarged by construction to encompass a situation where the door to a bar has been left open by mistake and where a minor is therefore able to gain entry.

■ A sale or barter of liquor involves a bargained-for exchange—i.e. consideration, which is "the voluntary assumption of an obligation by one party *on the condition* of

an act or forebearance by the other." *Cady,* 315 N.W.2d at 596, *citing Baehr v. Penn-O-Tex Oil Corp.,* 258 Minn. 533, 104 N.W.2d 661 (1960) and 1 A. Corbin, *Corbin on Contracts* § 116 (1963) (emphasis in original). In the present situation the plaintiff failed to establish that the defendant received any consideration in exchange for the liquor.[1] Even if the plaintiff had left money on the bar, it cannot be claimed that the defendant had the opportunity to bargain for or agree to the exchange.

■ As the trial court correctly observed, the burden at trial rested upon the plaintiff to prove that the defendant illegally sold liquor to Michael. *Hartwig v. The Loyal Order of Moose, Brainerd Lodge No. 1246,* 253 Minn. 347, 356, 91 N.W.2d 794, 801 (1958). The trial court found that the plaintiff had not met that burden. In the language of *Hartwig:*

> Suffice it to say that the evidence of illegal sale in this case is not as convincing as might be desired, especially in

view of the fact that the record indicates and suggests that some evidence of a direct nature ought to be available on the question of whether any clerk, barkeeper, or other employee of either of the defendants sold or furnished liquor to [the plaintiff] at the times in question prior to the accident.

*Id.* at 364, 91 N.W.2d at 807.

### DECISION

Because the evidence did not establish that the defendant Shortstop Bar made an illegal sale of liquor, the decision of the trial court in favor of the defendant is affirmed.

---

1. The plaintiff alleges that because the three boys had pooled their money in order to purchase the beer, which would have cost between six and seven dollars in 1979, and because Michael only had four or five dollars on his person at the time of the accident, therefore Michael must have left some money for the beer. Two flaws are immediately apparent here: first, it was established that Michael washed his car in Paynesville later that day, which might have cost something, and second, the testimony regarding the cost of a case of beer in 1979 was introduced by the plaintiff himself, with no foundation offered to establish his qualifications for making that estimate.