**Erin J. OSBORNE, individually and as parent and natural guardian of Alexia Ray Osborne Riley, et al., Appellants,**

v.

**TWIN TOWN BOWL, INC., d/b/a Jerry Dutler Bowl, Respondent.**

No. A06–1007.

Supreme Court of Minnesota.

May 30, 2008.

Kenneth R. White, Assistant Nicollet County Attorney, St. Peter, MN, for Appellant.

Steven Edward Tomsche, Bryan Barrett Carroll, Tomsche, Sonnesyn & Tomsche, Minneapolis, MN, for Respondents.

## OPINION

ANDERSON, PAUL H., Justice.

Michael Riley Jr.'s family brought a dram shop action against a bowling alley under Minn.Stat. § 340A.801 (2006). The family alleges that the bowling alley's illegal sale of alcohol caused Riley to be intoxicated, and that this intoxication caused

Riley to jump to his death into the Minnesota River. The Blue Earth County District Court granted the bowling alley's request for summary judgment, finding, as a matter of law, that Riley's intoxication was not a proximate cause of his injury. The Minnesota Court of Appeals affirmed. Because we conclude that a genuine issue of material fact exists concerning the issue of proximate cause, we reverse and remand for trial.

With the exception of the issue of proximate cause, the underlying facts concerning the events that took place before 24–year–old Michael Riley Jr. jumped to his death from the Highway 14 Bridge are undisputed. On April 18, 2001, Riley went out drinking with friends at a bowling alley establishment owned and operated by respondent, Twin Town Bowl, Inc., d/b/a Jerry Dutler Bowl. Twin Town Bowl is located in the city of Mankato. Riley left Twin Town Bowl in the early morning hours of April 19, 2001, and drove off in a motor vehicle. Shortly thereafter, at approximately 1:30 a.m., Trooper Kevin McDonald of the Minnesota State Patrol observed Riley driving 74 miles per hour in a 50 mile per hour zone. At the time, Riley was driving north on Highway 169 in the City of North Mankato. McDonald turned on his patrol car's emergency lights and sirens and pursued Riley. Riley did not stop his vehicle immediately but instead continued to drive for some distance.

Riley eventually stopped his vehicle near the middle of the Highway 14 Bridge over the Minnesota River. The Highway 14 Bridge connects the cities of North Mankato and Mankato. When McDonald approached Riley's vehicle to ask Riley for his driver's license, McDonald noticed the smell of alcohol. Due to McDonald's suspicions that Riley was intoxicated, he asked Riley to perform several field sobriety tests, all of which Riley failed. McDonald then directed Riley to blow into a device called a Preliminary Breathe Test (PBT), which showed that Riley's blood alcohol level was 0.18. As a result of these tests, McDonald advised Riley that he would be placed under arrest for driving while impaired. According to McDonald, up until this point Riley had been cooperative and non-threatening.

McDonald did not handcuff Riley after he advised Riley that he would be placed under arrest. Rather, while Riley remained standing near the front of McDonald's patrol car, McDonald briefly turned his back to Riley in order to place the PBT in his patrol car. After he turned away from Riley, McDonald faintly heard Riley say, "I'm outta here." When McDonald turned around he saw Riley running toward the bridge's railing, which was approximately 3 to 4 feet away from Riley. McDonald yelled, "No!" and tried to reach Riley, but before he could, Riley jumped off of the bridge's railing and into the Minnesota River. The river was above flood stage at the time. Riley did not survive the jump and several months later his body was found and removed from the river.

Appellants—Riley's mother, father, sister, girlfriend, and daughter—brought a dram shop action against Twin Town Bowl under Minn.Stat. § 340A.801 (2006). In their complaint, appellants allege that Twin Town Bowl unlawfully sold alcohol to Riley when Riley was obviously intoxicated, and that this unlawful sale caused Riley to jump to his death into the Minnesota River. Appellants contend that Riley jumped into the river to avoid arrest under the mistaken belief that he could swim safely to shore.[1]

---

1. Appellants assert that Riley did not jump off the bridge to commit suicide. For purposes

Twin Town Bowl moved to dismiss appellants' action pursuant to rule 12 and 56 of the Minnesota Rules of Civil Procedure, arguing that the appellants failed to state a claim upon which relief can be granted because Riley's intoxication was not a proximate cause of his death. The district court denied the motion, concluding that dismissal was premature due to incomplete discovery.

After the completion of further discovery, Twin Town Bowl again moved for summary judgment. As part of their response to Twin Town Bowl's motion, appellants submitted an expert psychological report as evidence that Riley's intoxication was a substantial cause of him jumping into the river to escape arrest. The report is an unnotarized affidavit based on the expert's examination of Riley's medical and drug history and the expert's interviews with Riley's family and friends. The report notes that Riley often experienced blackouts when drinking excessively. Additionally, the report indicates that family and friends told the expert that Riley displayed personality changes while intoxicated, changes that included: "increased energy, flamboyance, grandiosity, aggressiveness, impulsivity, and thrill-seeking." The report also includes the following information:

> Mr. Riley had * * * conversations at a local drinking establishment * * *, only weeks prior to his jump, [where he] talked about a person who escaped the Mall of America police by jumping into the river and swimming across * * *. Mr. Riley told others that he believed he

could do the same thing. In his mother's deposition, she cited conversations with him about his belief and claims and indicated that she tried to discourage him from such thinking because, in her opinion, it was an impossibility.

Based on his investigation, the expert gave the opinion that Riley was possibly in a blackout state when he jumped into the river and that "Riley would not have thought or attempted such an escape were he sober." [2]

The district court granted Twin Town Bowl's motion for summary judgment, finding that there was "no evidence and no genuine issue of material fact as to the essential element of causation." The court of appeals affirmed, concluding that "[a]bsent evidence that Riley's intoxication was the reason for his speeding, [McDonald's] stop, or Riley's fleeing arrest, these actions constitute breaks in the chain of causation between Riley's intoxication and his drowning." *Osborne v. Twin Town Bowl, Inc.*, 730 N.W.2d 307, 311 (Minn.App.2007). One judge dissented, asserting that dram shop liability depends on "whether the intoxication impaired the patron's physical or mental faculties so that his injurious actions can be said to result from the overservice and excessive consumption of alcoholic beverages." *Id.* at 313 (Ross, J., dissenting). Further, the dissent stated that "[t]he caselaw that defines proximate cause does not invite courts to decide as a matter of law that proximate cause is lacking when, as here, the facts suggest a direct link between the intoxication and the overserved patron's injurious act." *Id.*

---

of this summary judgment appeal, Twin Town Bowl does not dispute that Riley did not jump off the bridge to kill himself.

2.  The district court considered this psychological report as part of the record, but in a footnote the court stated that the report was of "minimal evidentiary value." The court of

appeals, agreeing that the report had minimal value, concluded that the report did not provide sufficient evidence of proximate cause to survive summary judgment. *Osborne*, 730 N.W.2d at 312. The expert report was considered by the district court and, therefore, we have considered it as part of the record.

The dissent concluded that "[a] factfinder could decide that Riley's intoxication so reduced his inhibitions, impaired his judgment, and deluded his perception that he chose imprudently to step from a bridge into a rushing river based on the misperception that he could swim safely to its bank." *Id.* at 312–13. The sole issue presented on appeal is whether there is a genuine issue of material fact as to whether Riley's intoxication was a proximate cause of him jumping to his death into the Minnesota River.

■ We have stated that "[s]ummary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. State, Dep't of Natural Res.*, 693 N.W.2d 181, 186 (Minn.2005); *see* Minn. R. Civ. P. 56.03. But we have acknowledged that summary judgment is a "blunt instrument," *Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 356 (Minn.1979), and "is inappropriate when reasonable persons might draw different conclusions from the evidence presented," *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997). Nevertheless, "[m]ere speculation, without some concrete evidence, is not enough to avoid summary judgment." *Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn.1993). To survive a summary judgment motion, the nonmoving party must therefore establish that there is a genuine issue of material fact through "substantial evidence." *DLH*, 566 N.W.2d at 70 (stating that "'substantial evidence' refers to 'legal sufficiency and not quantum of evidence'" (quoting *Murphy v. Country House, Inc.*, 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976))).

■ On appeal, we review a grant of summary judgment "to determine (1) if there are genuine issues of material fact and (2) if the district court erred in its application of the law." *K.R. v. Sanford*, 605 N.W.2d 387, 389 (Minn.2000). When summary judgment is granted based on application of the law to undisputed facts, as is the case here, the result is a legal conclusion that we review de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998); *see also Morton Bldgs., Inc. v. Commissioner*, 488 N.W.2d 254, 257 (Minn.1992).

■ Minnesota Statutes § 340A.801, the Civil Damages Act, is commonly referred to as the Dram Shop Act. Subdivision 1 of the act states:

> A spouse, child, parent, guardian, employer, or other person injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name for all damages sustained against a person who caused the intoxication of that person by illegally selling alcoholic beverages. All damages recovered by a minor under this section must be paid either to the minor or to the minor's parent, guardian, or next friend as the court directs.

We have said that the general purpose of the Dram Shop Act is "'to punish an offending vendor and deter others from making illegal sales of liquor, and to compensate those who would under ordinary circumstances or other tort principles obtain no recovery for their injuries.'" *Hannah v. Chmielewski*, 323 N.W.2d 781, 784 (Minn.1982) (quoting *Randall v. Village of Excelsior*, 258 Minn. 81, 84, 103 N.W.2d 131, 134 (1960)). Because the Dram Shop Act creates a remedy that did not exist at common law, it must be strictly construed "in the sense that it cannot be enlarged beyond its definite scope." *Beck v. Groe*, 245 Minn. 28, 34, 70 N.W.2d 886, 891

(1955). But when the Act's language is clear as to intent and purpose, we have "liberally construed [it] so as to suppress the mischief and advance the remedy." *Id.* at 34, 70 N.W.2d at 891.

■ To prevail in a dram shop action under section 340A.801, the claimant must first prove that the sale of alcohol was illegal under Minn.Stat. ch. 340A. *Rambaum v. Swisher,* 435 N.W.2d 19, 21 (Minn. 1989). The claimant must then "show by competent proof" that the illegal sale of alcohol "caused or contributed to * * * intoxication and that the same was a proximate cause of the [claimant's] injuries." *Kryzer v. Champlin Am. Legion No. 600,* 494 N.W.2d 35, 36 (Minn.1992) (quoting *Hartwig v. Loyal Order of Moose, Brainerd Lodge,* 253 Minn. 347, 355, 91 N.W.2d 794, 801 (1958)). For purposes of this appeal, Twin Town Bowl does not dispute that it illegally sold alcohol to Riley in violation of Minn.Stat. ch. 340 or that this sale caused Riley's intoxication. Therefore, the sole issue before us is whether the district court erred when it granted summary judgment based on its conclusion that Riley's intoxication was not, as a matter of law, a proximate cause of his decision to jump into the Minnesota River.

We have held that the causal relationship between intoxication and injury required to prevail in a dram shop action is *proximate* causation. *Id.* at 36–37 (rejecting the "but for" causation test and stating that proximate causation is required to recover under the Dram Shop Act). In the context of general tort liability, such as negligence actions, we long ago defined a proximate cause of a given result as "a material element or a substantial factor in the happening of that result." *Peterson v. Fulton,* 192 Minn. 360, 364, 256 N.W. 901,

903 (1934); *see George v. Estate of Baker,* 724 N.W.2d 1, 10 (Minn.2006) ("Minnesota applies the substantial factor test for causation. The negligent act is a direct, or proximate, cause of harm if the act was a substantial factor in the harm's occurrence."). In fact, we have equated the term "proximate cause" with the term "substantial factor." *Lestico v. Kuehner,* 204 Minn. 125, 133, 283 N.W. 122, 127 (1938) ("The jury should have been instructed that, whatever the speed, if it was not a proximate cause, that is, if it did not contribute as a 'substantial factor' to the result, there could be no liability in the absence of some other act of negligence by defendant."); *see also Peterson,* 192 Minn. at 364, 256 N.W. at 903 (indicating that the draft of the Restatement of Torts replaced the term "proximate cause" with "substantial factor"). Additionally, the Civil Jury Instruction Guide directs district courts in dram shop cases to instruct juries on causation by using the causation standard in negligence cases-that the intoxication "had a substantial part in bringing about the [injury]." 4 Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides,* CIVJIG 27.10 (5th ed.2006); *see* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides,* CIVJIG 45.30 (5th ed.2006) (stating that the direct causation standard for dram shop actions is the same as the CIVJIG 27.10 causation standard used in negligence cases).

■ Moreover, in the dram shop context itself, in regards to whether the illegal sale of alcohol caused the intoxication, we have adopted the general tort proximate cause definition, requiring only that the illegal sale is a contributing or substantial cause of the intoxication.[3] *E.g., Kryzer,*

---

**3.** When examining whether the illegal sale of alcohol *proximately* caused the intoxicated

party's intoxication under the Dram Shop Act, we have been clear that "[i]n order to estab-

494 N.W.2d at 36 ("[T]he liquor illegally sold need not be the sole cause of intoxication, * * * it is enough if it be a '*proximately* contributing cause.'" (quoting *Hahn v. City of Ortonville*, 238 Minn. 428, 432, 57 N.W.2d 254, 258–59 (1953))). We have not in the past departed, nor do we presently see any reason to depart from the general tort principles of proximate cause in the dram shop context, which is based in tort liability. *See Dahl v. Northwestern Nat. Bank of Minneapolis*, 265 Minn. 216, 221, 121 N.W.2d 321, 324 (1963). Thus, as is consistent with our general tort law and our dram shop case precedent, for proximate cause to exist between the intoxication and the injury in a dram shop action, we conclude that the intoxication must have been a substantial factor in bringing about the injury.

■ Whether proximate cause exists in a particular case is a question of fact for the jury to decide. *Norberg v. Northwestern Hospital Ass'n, Inc.*, 270 N.W.2d 271, 274 (Minn.1978). While "[i]n most cases, proof that intoxication caused the plaintiff's injury is not an issue," in some cases "a plaintiff's injury may be caused by factors that are entirely unrelated to the * * * intoxication." 5A Roger S. Haydock & Peter B. Knapp, *Minnesota Practice, Methods of Practice* § 3.10 (4th ed.2007). For example, in *Kryzer*, an intoxicated patron was ejected from a bar and was injured by a bar employee who removed her from the premises. 494 N.W.2d at 36. We concluded that the patron's intoxication, while a possible "occasion" for her ejection from the bar, was not a *cause* of her injury; it was the employee's actions while removing the patron that resulted in the patron's injuries. *Id.* at 37. Similarly,

in *Crea v. Bly*, an intoxicated female bar patron encouraged a male patron to attack the plaintiff, which the male patron did. 298 N.W.2d 66, 66 (Minn.1980). We held "as a matter of law that there was a break in the chain of causation between" the female patron's intoxication and the injuries the male patron inflicted on the plaintiff. *Id.*

In *Kunza v. Pantze*, the defendant became intoxicated at a bar and then left the bar with his wife in a motor vehicle. 527 N.W.2d 846, 847 (Minn.App.1995), *rev'd Kunza v. Pantze* 531 N.W.2d 839, 839 (Minn.1995). While driving the vehicle, the defendant began abusing his wife and as a result of the abuse, she jumped out of the moving vehicle to avoid further abuse. *Id.* The district court concluded that proximate cause did not exist between the defendant's intoxication and the wife's injuries from jumping out of the vehicle because the wife voluntarily opened the vehicle door, "thereby severing the causal chain." *See id.* at 848. On appeal, the court of appeals reversed the district court, reasoning that injuries resulting from an attempt to avoid the direct consequences of wrongful conduct can be proximately caused by that wrongful conduct. *Id.* at 850–51. The court of appeals likened the wife's jumping out of the vehicle to a driver's attempt to avoid crashing into the vehicle of a negligent driver. *Id.* But on review, we summarily reversed the court of appeals' decision and reinstated the district court's grant of summary judgment. *Kunza v. Pantze*, 531 N.W.2d 839, 839 (Minn.1995).

Twin Town Bowl argues that as in *Kryzer*, *Crea*, and *Kunza*, Riley's intoxication

---

lish liability for an illegal sale * * *, the liquor sold need not be the sole cause of intoxication but it is enough if it is a co-operating, concurring, or proximately contributing cause." *Hahn v. City of Ortonville*, 238 Minn.

428, 432, 57 N.W.2d 254, 258–59 (1953); *accord Trail v. Village of Elk River*, 286 Minn. 380, 390, 175 N.W.2d 916, 922 (1970); *Fest v. Olson*, 138 Minn. 31, 33–34, 163 N.W. 798, 798–99 (1917).

was the "occasion" but not the "cause" of his injury. Twin Town Bowl also argues that it was Trooper McDonald's reaction to Riley—McDonald stopping, arresting, and not handcuffing Riley—that caused Riley's injury, not Riley's intoxication. Conversely, appellants argue that all of the above cases can be distinguished because a third party was responsible for the injury in each of those cases, whereas here, it was Riley's own impaired decision to jump into the river that directly caused his injury.

Appellants are correct when they assert that in *Kryzer, Crea*, and *Kunza* we concluded there was no proximate cause because the injuries in question were caused by the choices and actions of a third party. In *Kryzer*, the bouncer's handling of the intoxicated patron caused the patron's injuries. In *Crea*, the friend of the intoxicated female patron assaulted the plaintiff.[4] In *Kunza*, the sober wife opened the door, jumped out of the moving vehicle, and caused her own injuries. In all three cases, something other than the intoxicated party's actions or decisions led to the injury. Thus, in each case we concluded that summary judgment was appropriate because, as a matter of law, the intoxicated party's faculties, which were impaired by alcohol, could not have directly caused an injury that resulted from the actions and choices of another person.

In this case, we conclude that it was not the choice of a third party, but instead Riley's own choice that caused his injury. It was Riley's decision to jump into the river, and him acting on that decision, that led to his death. While Twin Town Bowl argues that McDonald's reaction to Riley caused Riley's injury, Riley's decision to jump into the river could not have been caused by McDonald. McDonald placing Riley under arrest and not handcuffing him may have given Riley the occasion to make a decision about whether he should jump into the river to avoid arrest, but it was Riley who chose to and did jump into the river.

Unlike the actions of a third party, it is possible that Riley's choices and actions substantially resulted from his intoxicated state of mind. Much like an intoxicated driver who speeds up at a red light because his alcohol-impaired judgment leads him to believe he can make it through an intersection before an oncoming vehicle arrives, Riley's decision to jump off a bridge when faced with arrest could have been substantially and directly caused by his alcohol-impaired judgment. *Cf. Kvanli v. Village of Watson*, 272 Minn. 481, 485, 139 N.W.2d 275, 278 (1965) (concluding that a jury could infer "that lack of judgment or perception resulting from [a driver's] intoxication * * * was a proximate cause" of the driver hitting a pedestrian with his motor vehicle). Thus, we conclude that unlike the cases where we have affirmed the summary dismissal of a case because proximate cause did not exist, in this case it is not clear that Riley's injuries were "caused by factors that are entirely unrelated to [his] intoxication." 5A Haydock & Knapp, *supra* § 3.10. On this point, we agree with the reasoning of the court of appeals dissent that "[t]he caselaw that defines proximate cause does not invite courts to decide as a matter of law that proximate cause is lacking when, as here, the facts suggest a direct link between the intoxication and the overserved patron's injurious act." *Osborne*, 730 N.W.2d at 313 (Ross, J., dissenting).

---

**4.** In *Crea,* we stated that "[w]hile the duties of dram shops to the public are and should be onerous, they do not extend to anticipating and protecting the public from the excesses of *third parties* beguiled into committing assaults on innocent victims by the importuning of intoxicated female patrons." 298 N.W.2d at 66 (emphasis added).

We emphasize, however, that consistent with our *Kryzer* opinion, there must be sufficient evidence that Riley's intoxication was a *proximate* cause, not merely a "but for" cause, of his injury. Thus, the dissent here is correct in stating that there must be a " 'causal connection between the intoxication and the injury' that is more than simply an occasion for the injury" (quoting *Kryzer*, 494 N.W.2d at 38). But we disagree that the intoxication must be the *sole* cause of injury for liability to attach under the Dram Shop Act.

■ While it is true that we have not been explicit in our adoption of the "substantial factor" test when examining whether proximate cause exists between intoxication and injury in dram shop cases, we find no support for the contention that in dram shop actions there cannot be two contributing substantial causes of the injury. First, as discussed above, it is a well-settled tort principle that a proximate cause of a given result is that which is a substantial factor in bringing about that result. *Peterson*, 192 Minn. at 364, 256 N.W. at 903. We find no rationale for departing from this well-developed law or for rejecting the application of tort principles to dram shop actions, which are, in fact, tort actions. *Dahl*, 265 Minn. at 221, 121 N.W.2d at 324.

Second, a look at our past dram shop cases convinces us that we have, even if only implicitly, applied the general tort definition of proximate cause and rejected the notion that intoxication must be the *sole* proximate cause of injury in the dram shop context. We note that we have used both the terms "*the* proximate cause" and

"*a* proximate cause" when describing the necessary causation between intoxication and injury.[5] But we have never said or implied that intoxication must be the sole cause of the injury. Moreover, we have concluded that a defendant is liable under the dram shop act when the allegation is that intoxication was only a contributing cause of the injury. For example, in *Lefto,* we affirmed a grant of summary judgment in favor of plaintiffs when all the plaintiffs alleged was that the illegal sale of alcohol that caused the intoxication was "a contributing cause to the accident" and the resulting injury. *Lefto,* 581 N.W.2d at 856.

Further, in *Kvanli,* we concluded that the evidence was sufficient to support a jury finding that the intoxication "was a proximate cause of the events which brought about the injury." 272 Minn. at 485, 139 N.W.2d at 278. In *Kvanli,* we explicitly stated that "[t]he jury was justified in concluding that intoxication caused [the] plaintiff's injury." *Id.,* 139 N.W.2d at 278. In support of this conclusion we added that "[t]here is nothing in the record to support a finding that negligence on the part of plaintiff himself was the *sole* cause of the accident. Concurring negligence, if any, would not bar recovery." *Id.,* 139 N.W.2d at 278 (emphasis added). Thus, as articulated in *Kvanli,* our dram shop case law supports our conclusion that the intoxication need not be the sole cause of injury.

*Kvanli* also leads us to another principle that supports our definition of proximate cause. The Dram Shop Act explicitly provides that comparative negligence principles to apply to dram shop actions. *See*

---

5. *Compare Kvanli,* 272 Minn. at 485, 139 N.W.2d at 278; *Murphy v. Hennen,* 264 Minn. 457, 460, 119 N.W.2d 489, 491 (1963); *Hartwig v. Loyal Order of Moose, Brainerd Lodge No. 1246,* 253 Minn. 347, 356, 91 N.W.2d 794, 801 (1958), *with State Farm Mut. Auto. Ins. Co. v. Village of Isle,* 265 Minn. 360, 365, 122 N.W.2d 36, 40 (1963); *see also Kryzer,* 494 N.W.2d at 36 (citing both "the proximate cause" and "a proximate cause" standards for the causation necessary between intoxication and injury); *Hempstead v. Minneapolis Sheraton Corp.,* 283 Minn. 1, 9, 166 N.W.2d 95, 100 (1969).

Minn.Stat. § 340A.801, subd. 3 (2006). This comparative negligence provision evidences the legislature's intent to hold dram shop owners liable for an illegal sale of alcohol even if another party shares responsibility for causing the injury. Although comparative fault is not synonymous with proximate causation, the implication of comparative fault is that there is some other contributing *cause* of the resulting injury. Minn.Stat. § 604.01, subd. 1a (2006) ("Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault."). The legislature has made clear, and we have recognized, that comparative fault principles apply in our dram shop actions and that there can be more than one party at fault for the injury. *See K.R. v. Sanford*, 605 N.W.2d 387, 392 (Minn.2000); *Fitzer v. Bloom*, 253 N.W.2d 395 (Minn.1977). If more than one party can be liable, it must be the case that more than one party may be the "legal" cause of the injury—namely, the proximate cause—because causation is a necessary element for comparative fault.

■■■ Today, we reaffirm the well-established tort principle in the dram shop context that intoxication need only be "*a* substantial factor in bringing about the injury." *Flom v. Flom*, 291 N.W.2d 914, 917 (Minn.1980) (emphasis added) (defining proximate cause in the context of a negligence action); *see also Kryzer*, 494 N.W.2d at 37 (citing *Flom* while discussing the definition of proximate cause under the Dram Shop Act).

Thus, we conclude that in order to survive summary judgment in this case, appellants were required to set forth sufficient evidence showing that there is a genuine issue of material fact as to whether Riley's intoxication was a substantial factor in his decision to jump into the Minnesota River in order to escape arrest. Appellants assert that Riley's intoxication was a substantial factor in bringing about his injury because Riley's alcohol-impaired judgment caused him to choose to avoid arrest by jumping into the flood-swollen river under the mistaken belief that he could swim safely to shore. Twin Town Bowl asserts that one can only speculate that intoxication was a substantial factor in Riley's decision, and mere speculation is not enough to survive a summary judgment motion. *See Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn.1993).

*Black's Law Dictionary* defines intoxication as "[a] diminished ability to act with full *mental* and physical capabilities because of alcohol or drug consumption." *Black's Law Dictionary* 841 (8th ed.2004) (emphasis added). The *Diagnostic and Statistical Manual of Mental Disorders* classifies intoxication as a mental disorder that causes "maladaptive behavior or psychological changes," including "belligerence, mood liability, cognitive impairment, impaired judgment, [and] impaired social or occupational functioning." Am. Psychiatric. Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 199–200, 196–97 (4th ed., text rev.2000) (hereinafter DSM IV); *accord id.* at 214–25. Further, we have stated that the effects of intoxication are within common knowledge of lay people, *State v. Griese*, 565 N.W.2d 419, 425 (Minn.1997), and it is generally known that alcohol impairs both mental and physical capacity.[6] Therefore, much like a

---

**6.** We note that while the dissent takes issue with our use of *Griese,* we cite this case only to support the proposition that we have held that the effects of intoxication are within common knowledge of lay people. We do not claim, as the dissent incorrectly asserts, that *Griese* "stands for the proposition that common knowledge about alcohol effects provides sufficient evidence of causation by itself to

drunk driver's clouded judgment and impaired physical faculties may substantially cause him to be involved in a motor vehicle accident, we conclude that the known and proven effects of alcohol, in concert with the fact that Riley—while intoxicated—made a choice to escape arrest by jumping into a river, provide appellants with sufficient evidence to create a genuine issue of material fact as to whether Riley's intoxication proximately caused Riley to choose to jump into the river under the mistaken belief that he could swim safely to shore.

Our conclusion is supported by our decision in *Kvanli,* where an intoxicated driver who was involved in a motor vehicle accident continued to drive at a reduced speed and then accelerated when he was approximately 10 feet away from a pedestrian. 272 Minn. at 485, 139 N.W.2d at 278. The driver hit the pedestrian and then drove off. *Id.,* 139 N.W.2d at 278. When concluding that there was sufficient evidence for the jury to find that the driver's intoxication caused the pedestrian's injuries, we focused on the driver's alcohol-impaired mental and physical faculties as a cause of the accident. *Id.* at 485, 139 N.W.2d at 278. We concluded that based on the facts of the case, "[t]he jury could infer that lack of judgment or perception resulting from intoxication produced by the consumption of the liquor was a proximate cause of the events which brought about the injury." *Id.,* 139 N.W.2d at 278.

Similarly, in this case, a jury could infer from the evidence that Riley's impaired judgment from his intoxication was a proximate cause of his fatal jump into the river. Because alcohol causes maladaptive behavior and psychological changes—including belligerence, cognitive impairment, and impaired judgment (DSM IV, *supra,* 199–200, 214–15)—it is possible that it was Riley's intoxication that made jumping into the river appear to be a desirable and viable alternative to arrest. The evidence at trial may show that if Riley was sober he may have still wanted to avoid being arrested, but that with unimpaired mental faculties, he might have been more rational and chosen not to evade arrest or at least not to do so by jumping into a flood-swollen river. Conversely, because evidence in the record suggests that Riley may have had a history of evading arrest and that he had previously told friends and family that he thought he could avoid arrest by swimming safely across a river, it may be the case that the intoxication did not substantially cause Riley to jump into the Minnesota River. But while this predisposition may have been a substantial factor, intoxication may also have been a substantial factor, especially in influencing Riley to actually attempt an escape by jumping into the river. In any case, these questions are precisely the kinds of questions that should be answered by a jury.

The dissent asserts that *Kvanli* does not support our conclusion that the commonly known effects of alcohol and the facts of this case provide sufficient evidence to create a genuine issue of material fact as to whether Riley's intoxication substantially caused him to jump into the river. But our analysis of proximate cause in *Kvanli* shows that a person's intoxication at the time of the injury-causing event has been sufficient to withstand summary judgment when the injury was caused by the actions and choices of the intoxicated party. As discussed above, in *Kvanli* we stated that based on the fact that the driver was intoxicated when he hit a pedestrian with his vehicle and then sped off, a jury could conclude that the driver's alcohol-impaired judgment proximately caused the pedestri-

overcome a properly supported motion for summary judgment."

an's injuries. 272 Minn. at 485, 139 N.W.2d at 278.

Our conclusion is further supported by our holding in *Murphy v. Hennen,* 264 Minn. 457, 119 N.W.2d 489 (1963). In *Murphy,* we upheld a jury verdict, after a full trial on the merits, finding a liquor establishment liable under the Dram Shop Act when an intoxicated party was involved in a motor vehicle accident. 264 Minn. 457, 461, 119 N.W.2d 489, 491–92 (1963). In addressing a sufficiency of the evidence claim with respect to proximate cause, we stated that there was "ample evidence from which the jury could find that [the intoxicated party's] intoxication caused the collision." *Id.* at 461, 119 N.W.2d at 492. The evidence we cited to support this conclusion consisted of two things: (1) the allegedly intoxicated party was, in fact, intoxicated, and (2) the nature of the accident. *Id.,* 119 N.W.2d at 491– 92. When concluding that the nature of the accident provided sufficient evidence to uphold the verdict we stated that the evidence showed "the collision occurred because [the intoxicated party] drove his automobile upon the wrong side of the highway and into the [injured party's] car." *Id.,* 119 N.W.2d at 492. We went on to state that "[t]he inference of intoxication as a cause is compelling when it is remembered that [the intoxicated party] sideswiped another car driving in the same direction as the [injured party's] car moments before the collision." *Id.,* 119 N.W.2d at 492. Based on this evidence as to the nature of the accident, as well as evidence of the driver's intoxication, we held that there was sufficient evidence to support the jury finding that the driver's intoxication caused that accident. *Id.,* 119 N.W.2d at 491–92.

In this case, we are not called upon to determine whether the evidence is sufficient to support the higher preponderance of the evidence standard that was needed to support the jury verdict in *Murphy.* Rather, for purposes of a summary judgment motion, there only needs to be a genuine issue of material fact for the case to go to trial. *Anderson,* 693 N.W.2d at 186. Thus, our reasoning and conclusions in *Murphy*—that under a higher standard there was sufficient evidence to uphold a jury verdict-support our conclusion that there is a genuine issue of fact concerning whether Riley's intoxication was a proximate cause of his radical and unwise choice to escape arrest by jumping into the river.

That this case involves unconventional facts that may, at first glance, appear more complicated than the more common drunk driver or bar fight scenarios does not remove this case from the realm of a typical dram shop action. The question here, *as in any other dram shop case,* remains whether the intoxication was a proximate cause of the injury, that is, whether Riley's intoxication substantially caused his decision to jump into the river. We conclude that a genuine issue exists as to this fact. Nevertheless, we emphasize that our holding is only that for purposes of summary judgment there exists a genuine issue of material fact as to whether Riley's intoxication was a proximate cause of his decision to jump into a river to escape arrest. As such, we hold that the district court erred when it granted Twin Town Bowl's motion for summary judgment.

We note that the dissent takes issue with our proximate cause analysis and our conclusion regarding expert testimony. Because we hold that, for purposes of summary judgment, the known effects of intoxication and the facts of this case are sufficient to create a genuine issue of material fact as to proximate cause, we have no need to determine the weight, if any, that is to be given to the expert report or its

admissibility at trial. Nevertheless, if we give the expert report the weight it is given by the dissent, we conclude that this report only strengthens our conclusion that a genuine issue of material fact exists as to whether intoxication was a proximate cause of Riley's injury. The report includes such findings as (1) "[Riley's] judgment was severely impaired and his ability to make wise decisions very much compromised when he became inebriated," (2) "he experienced blackouts when inebriated," and (3) "[he] took risks and did things when inebriated that *he would not do when sober,* and that many of those behaviors were in poor judgment and without concern for consequences." (Emphasis added.) A careful reading of the report thus reveals that the focus of the report is how alcohol affected Riley.[7]

Even if we were to accept the dissent's interpretation of the expert report—that Riley had a predisposition to evade the police—which we conclude is incorrect, this does not preclude a conclusion that there is sufficient evidence to survive a motion for summary judgment. First, the dissent states that the expert identifies two causes of Riley's death—a predisposition to evade police and intoxication. The dissent asserts that there is no basis in the record to distinguish between these potential causes, and therefore, the appellants did not satisfy their burden to withstand summary judgment. But as discussed above, the causation requirement in a dram shop action is that the intoxication was *a* proximate cause of the injury, or in other words, a substantial factor. It need not be the sole proximate cause. *See Kryzer,* 494 N.W.2d at 36. Thus, even if Riley had a predisposition to evade arrest, this predisposition would not preclude a finding that the intoxication was still *a substantial factor* in Riley choosing to evade arrest on the night of his death. Further, even if Riley would have tried to escape from the police when sober, this does not preclude a finding that Riley's chosen method of escape-jumping off a bridge into a flood-swollen river—was proximately caused by his intoxication.

Second, the dissent argues that appellants have provided no basis to distinguish

7. The dissent asserts that Riley had a "predisposition" to attempt to evade police. The dissent quotes the expert report, which states that Riley "appeared to have a tendency to defy and flee from police when encountering them and, especially, if he anticipated arrest." But the dissent mistakenly characterizes this sentence, which, within the context of the paragraph and the remainder of the report, indicates that the expert is asserting that Riley had a tendency to attempt to evade arrest, engage in other risk-taking activities, and display impaired judgment *when intoxicated.* The paragraph from which the dissent takes its quotation reads:

> There is sufficient evidence that [Riley's] personality did change *under the influence of alcohol* and/or other drugs and his judgment was clearly impaired during those times. He drove vehicles while inebriated, having one serious accident when drunk. He appeared to have a tendency to defy and flee from police when encountering them

and, especially, if he anticipated arrest. This occurred clearly on one arrest where he attempted to run and, when stopped, fought and bit the arresting police officer. There is a note in the documents suggesting that when he was found passed out on highway 169 and he heard the sirens of an ambulance, he attempted to get up and run. * * * These arrest-resisting attempts may be viewed as acts of defiance toward authority and * * * also appear to be more impulsive and less thoughtful of consequences *than would be seen in [Riley] when he was sober.* * * * These and various other incidents show that [Riley] not only suffered from impaired judgment, but also became vulnerable to harm himself and/or others *when inebriated.*

(Emphasis added.) Upon a complete reading of the particular paragraph, we conclude that its focus, as well as the focus of the expert report in general, is on how alcohol affected Riley.

between the two potential causes supported by the expert report—intoxication and Riley's predisposition to evade police. But even if the expert report did provide evidence of some sort of general predisposition to evade police, the jury does not have to choose between Riley's predisposition, his intoxication, or a combination of the two. All that is required for liability under the Dram Shop Act is that the intoxication was *a* substantial factor that caused the injury. While the dissent correctly asserts that the district court must grant summary judgment if the evidence supports "two or more inconsistent inferences so that one inference does not reasonably preponderate over the others," (*E.H. Renner & Sons, Inc. v. Primus*, 295 Minn. 240, 243, 203 N.W.2d 832, 835 (1973)), there is nothing inconsistent about a finding that Riley's predisposition to escape arrest and his intoxication on the night of his death were both substantial factors that caused him to jump into the Minnesota River to escape the police. Therefore, the jury could find that Riley's predisposition, his intoxication, or both factors acting in concert proximately caused his injury.[8]

▮▮▮ Finally, the dissent asserts that the record provides no basis to determine whether Riley's intoxication proximately caused his injury because appellants of-

fered no admissible expert testimony to "sort out" the causation question. We first emphasize that in order to survive a summary judgment motion, all appellants need to show is that "reasonable persons might draw different conclusions from the evidence presented." *DLH Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997). Thus, at this stage of the proceedings, appellants need not meet the dissent's heightened burden of sorting out the causation element. Second, as stated above, we have said that the effects of alcohol are within the common knowledge of lay people so expert testimony may not be necessary to prove appellants' case. *Griese*, 565 N.W.2d at 425. Moreover, were expert testimony necessary, the expert psychological report, which was considered by the district court as part of the record and cited at length by the dissent as the basis for its argument, provides direct evidence on the question of whether Riley's intoxication proximately caused his injury.

After an analysis of Riley's history, personality, and drug abuse, the expert concluded his report with the opinion that Riley's jump was "made while inebriated and possibly in a blackout state with the grandiose belief that he had the physical capacity to overcome the cold swift currents of the Minnesota River and escape

---

8. We note that the dissent appears to use the case law concerning inconsistent inferences to support its conclusion that there cannot be two substantial factors that brought about the injury. But it appears that this case law concerns the sufficiency of the evidence and not the definition of proximate cause. *See, e.g., Hagsten v. Simberg*, 232 Minn. 160, 164, 44 N.W.2d 611, 613 (1950) (citing *Alling v. N.W. Bell Tel. Co.*, 156 Minn. 60, 63, 194 N.W. 313, 315 (1923)). Further, we agree with the proposition cited in these cases that if there are "two or more inconsistent inferences so that one inference does not reasonably preponderate over the others," summary judgment in favor of the defendant is appropriate. *E.H. Renner & Sons, Inc.*, 295 Minn. at 243,

203 N.W.2d at 835. But we again emphasize that the existence of more than one cause of the injury does not necessarily lead to the conclusion that they are inconsistent or that they are not both substantial factors in bringing about the injury. Thus, as we previously stated, if the causes are consistent and are both substantial factors in bringing about the result, they may both be a proximate cause of that result. We find support in our conclusion in the fact that the inconsistent inferences principle that the dissent cites comes from the very same general tort law principles in which we have defined a proximate cause of a result as a substantial factor in bringing about that result.

arrest by swimming to the other shore." The expert went on to state that in his opinion, Riley "would not have thought or attempted such an escape were he sober and, in fact, he would very likely not have acted in the ways he did, during the fatal evening." The expert concluded with the following statement: "I am of the opinion that [Riley's] alcohol inebriation played a *substantial part* in bringing about his decision to jump into the river, and that he almost certainly would not have done so if sober." (Emphasis added.) Thus, if expert testimony were needed to determine whether Riley's intoxication was a proximate cause of his injury, the expert report in this case provides sufficient evidence to create a genuine issue of material fact as to the proximate cause issue.

We therefore conclude that, for purposes of summary judgment, the evidence here is substantial enough so that "reasonable persons might draw different conclusions" about whether Riley's intoxication caused him to make the fatal choice to jump into the river to avoid arrest. *DLH*, 566 N.W.2d at 69. Accordingly, we hold that the district court erred when it granted Twin Town Bowl's motion for summary judgment.

Reversed and remanded.

DIETZEN, J. not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

PAGE, Justice.

I respectfully dissent, because I believe the case can be resolved on procedural grounds alone.

Appellants' complaint alleges that "[t]he illegal sale of intoxicating liquors by [respondent] to Michael K. Riley, Jr., caused or contributed to the intoxication of Michael K. Riley, Jr.," and that "Michael K. Riley, Jr.'s intoxication was a direct and approximate cause of his decision to jump into the River." We have said, on occasions too numerous to count, that faced with a properly supported motion for summary judgment, the nonmoving party cannot simply rely on its pleadings to oppose the motion. *E.g., Papenhausen v. Schoen*, 268 N.W.2d 565, 571 (Minn.1978); *Murphy v. Country House, Inc.*, 307 Minn. 344, 348, 240 N.W.2d 507, 511 (1976). Yet, that is precisely what the court allows these appellants to do. Faced with a properly supported motion for summary judgment that demonstrates that Riley's intoxication was not a factor at all in the trooper's decision to stop Riley (much less a substantial one), the court allows the appellants to defeat the motion based on nothing more than the complaint's recitation of the elements of a dram shop cause of action and "the known and proven effects of alcohol."[1] Dram shop liability in Minnesota may be strict liability, but sure-

---

1. I discount entirely the report of appellants' expert, which was filed in opposition to the motion for summary judgment. The court characterizes the expert's report in this case as "an unnotarized affidavit." Such a characterization suggests that the report lacked only a notary's imprimatur to allow it to be considered by the district court. In reality, it lacked much more than that. Only evidence that is admissible may be considered as either supporting or opposing summary judgment. Minn. R. Civ. P. 56.05 (requiring that affidavits supporting and opposing summary judgment "shall set forth such facts as would be admissible in evidence"). The document is not an "unnotarized affidavit." It is a letter from the expert to appellants' lawyer, dated after the filing of respondent's motion to dismiss. As such, it is hearsay not covered by any exception, and I cannot conceive of a reason it would be admissible. See Minn. R. Evid. 803(6) (excluding from the definition of admissible business records "[a] memorandum, report, record, or data compilation prepared for litigation").

ly something more than a bare-bones complaint and common knowledge should be required to establish a genuine issue of material fact sufficient to defeat summary judgment.

I respectfully dissent.

GILDEA, Justice.

Appellants, Michael Riley's survivors, bring this action under Minn.Stat. § 340A.801 (2006) ("Dram Shop Act"), contending that respondent's illegal sale of alcohol to Riley caused them injury. Specifically, appellants allege in the complaint that because of respondent's illegal sale of alcohol, Riley's judgment was so impaired that he thought he could safely avoid arrest by jumping off a bridge and into the river below. Rather than swimming to safety, Riley drowned, and appellants allege that they suffered injury as a result of his death. After the conclusion of discovery, respondent successfully moved for summary judgment.

The majority reverses the entry of summary judgment and grounds this result on two faulty premises. First, the majority holds that intoxication does not need to be the sole cause of injuries for liability to attach under the Dram Shop Act. Second, the majority holds that expert testimony is not necessary to create a fact issue on causation in this case because the general effects of alcohol are within the common knowledge of jurors. The majority accordingly concludes that there is a genuine issue of fact on the causation question presented in this case. I disagree with both of the premises that the majority uses to support its conclusion. In my view, appellants did not sustain their burden at the summary judgment stage to create a genuine issue as to whether the intoxication caused Riley's death. I would affirm.

I.

Summary judgment is to be awarded to the defendant when the plaintiff's evidence on an essential element of his claim does not create a genuine issue of material fact as to that element. *See* Minn. R. Civ. P. 56.03 ("Judgment shall be rendered forthwith if * * * there is no genuine issue as to any material fact"); *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997) (holding that "there is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue"); *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995) ("A defendant is entitled to summary judgment as a matter of law when the record reflects a complete lack of proof on an essential element of the plaintiff's claim."). The element at issue in this case is causation within the context of the Dram Shop Act.

A.

The element of causation under the Dram Shop Act is met if the plaintiff proves that she incurred "pecuniary loss * * * by the intoxication of another person." Minn.Stat. § 340A.801, subd. 1. To sustain her burden of proof under the Dram Shop Act, we have said that the plaintiff must show a "causal connection between the intoxication and the injury" that is more than simply an occasion for the injury. *Kryzer v. Champlin Am. Legion No. 600,* 494 N.W.2d 35, 37–38 (Minn. 1992) (citing *Childs v. Standard Oil Co.,* 149 Minn. 166, 170, 182 N.W. 1000, 1001 (1921) (expressly rejecting the "but for" test for causation)).

With respect to the element of causation, we long ago recognized that "[i]f the facts furnish no sufficient basis for inferring which of several possible causes produced the injury, a defendant who is responsible for only one of such possible

causes cannot be held liable." *Alling v. Nw. Bell Tel. Co.,* 156 Minn. 60, 63, 194 N.W. 313, 315 (1923). More recently, in *E.H. Renner & Sons, Inc. v. Primus,* 295 Minn. 240, 243, 203 N.W.2d 832, 835 (1973), we cited *Alling* and said that if the evidence supports "two or more inconsistent inferences so that one inference does not reasonably preponderate over the others, the complainant has not sustained the burden of proof on the proposition * * * [and][i]t becomes the duty of the trial court to direct a verdict" in favor of the defendant. *See also Wall v. Fairview Hosp.,* 584 N.W.2d 395, 405–08 (Minn.1998) (applying *E.H. Renner* and affirming the district court's direction of verdict on the statutory claim in favor of defendant); *Lubbers,* 539 N.W.2d at 402 (noting that where the record requires "speculation and conjecture" as to the cause of the accident, summary judgment should be awarded to defendant). The majority seemingly concludes that these cases do not apply to the Dram Shop Act. I disagree.

The majority holds that the dram shop owner is liable even if the intoxication was only one of several contributing causes of the injury. In my view, the broad formulation of causation under the Dram Shop Act that the majority applies in this case is not consistent with the language of the statute or with our precedent.

The statutory language does not support the majority's expansion of liability. The statute provides a right of action when a person incurs loss *"by the* intoxication." Minn.Stat. § 340A.801, subd. 1 (emphasis added). The Dram Shop Act does not say that a plaintiff has a right of action if she incurs damage by intoxication *and* something else. We are to "strictly construe[ ]" the Dram Shop Act so as not to enlarge it "beyond its definite scope." *Urban v. Am. Legion Dep't of Minn.,* 723 N.W.2d 1, 6 (Minn.2006) (internal quotation omitted). The majority's expansive view of causation is not a strict construction of the statute, but is one that extends the Dram Shop Act well "beyond its definite scope." *Id.*[1]

The majority's new rule is also inconsistent with our precedent. If, as the majority concludes, intoxication could be one of many causes for the injury, it seems to me that the intoxication becomes simply the occasion for the injury. But that is precisely what we said in *Kryzer* was *not* sufficient evidence of causation to sustain an action under the Dram Shop Act. 494 N.W.2d at 37 (noting that "intoxication may have been the occasion for [Kryzer's] ejection from the legion club, but it did not cause" the injury).

The majority attempts to find support for its new rule in *Lefto v. Hoggsbreath Enterprises, Inc.,* 581 N.W.2d 855, 857 (Minn.1998). The majority contends that *Lefto* stands for the proposition that intoxi-

---

1. The majority also relies on the fact that the Dram Shop Act was amended to provide that comparative fault principles operate under the statute. Minn.Stat. § 380A.801, subd. 3. The majority says that this addition means the legislature intended "to hold dram shop owners liable for an illegal sale of alcohol even if another party shares responsibility for causing the injury." But the comparative fault statute relates to the fault of the plaintiff and there is no suggestion that the plaintiffs in this case were at fault in any way for the injuries they suffered. *See K.R. v. Sanford,* 605 N.W.2d 387, 390 (Minn.2000) (discussing plaintiff's provision of alcohol to those who assaulted her). Thus, the comparative fault principles the legislature has written into the statute are not relevant to the causation question presented in this case. For the same reason, the majority's discussion of the reference in *Kvanli v. Village of Watson,* 272 Minn. 481, 485, 139 N.W.2d 275, 278 (1965), to "[c]oncurring negligence" of the plaintiff is not relevant to the causation question presented here.

cation needs to have been only one of several "contributing causes" of an injury under the statute. The majority over reads *Lefto*. The issue in *Lefto* was not what caused the plaintiff's injuries. The issue in *Lefto* was whether the plaintiffs were proper victims under the statute. *Id.* at 857 (noting that question presented required construction of "the Act's term 'other person'"). *Lefto* did not present an occasion for us to address causation under the Dram Shop Act and it provides no basis for the broad causation standard the majority engrafts onto the statute.

The majority also relies on *Kryzer* and notes that the illegal sale of alcohol does not have to be the sole cause of the intoxication. But that is a different question from the one presented in this case. The issue in this case is not who provided alcohol to Riley or how he became intoxicated. The issue in this case is what caused the plaintiff's injuries. The sentence from *Kryzer* that the majority appears to quote does not relate to the causation question presented in this case, which is whether the *intoxication caused the damage.* Rather, the sentence the majority selectively quotes addresses whether the *liquor illegally sold caused the intoxication.* See *Kryzer*, 494 N.W.2d at 36 (noting that "the liquor illegally sold need

not be the sole cause of intoxication, that it is enough if it be a *proximately* contributing cause." (internal quotation marks omitted)).[2] The relevant sentence from *Kryzer* provides: "Thirty-seven years ago this court ruled that a claimant seeking recovery pursuant to the civil damage act must show that the defendant illegally sold intoxicating liquor which caused intoxication and 'that such intoxication was the proximate cause of plaintiff's injuries.'" *Id.* (quoting *Strand v. Village of Watson*, 245 Minn. 414, 419, 72 N.W.2d 609, 614 (1955) (emphasis added)).[3] In my view, this formulation of the proximate cause rule is in accord with *Alling* and its progeny, and I would apply the rule of law from those cases here.[4]

### B.

Appellants' theory on causation is that Riley's intoxication proximately caused his death. The question of causation is often one for the jury. But when the issue of causation presents a matter that is outside the common understanding of lay people, we require expert testimony to support the element of causation in order for a plaintiff to get her case to the jury. *See, e.g., Gross v. Victoria Station Farms, Inc.*, 578

2. The additional authorities the majority cites in note 3, *Trail v. Village of Elk River*, 286 Minn. 380, 390, 175 N.W.2d 916, 922 (1970), *Hahn v. City of Ortonville*, 238 Minn. 428, 432, 57 N.W.2d 254, 258–59 (1953), *Fest v. Olson*, 138 Minn. 31, 33–34, 163 N.W. 798, 798–99 (1917), are inapposite for the same reason.

3. I acknowledge that the syllabus in *Kryzer* says: "[T]he liquor illegally sold need not be the sole cause of intoxication, but it must be a proximately contributing cause; and the intoxication caused by the illegal sale need not be the sole cause of injury, but it must be a proximately contributing cause." 494 N.W.2d at 35–36. But we have long recognized that when a syllabus is different from

the body of the opinion, we look to the body of the opinion and not to the syllabus. *See Barrie v. N. Assur. Co.*, 99 Minn. 272, 273, 109 N.W. 248, 249 (1906) (noting that syllabus "is misleading" and looking to the text of the opinion for the rule).

4. The majority attempts to distinguish the *Alling* line of cases because these cases, according to the majority, "concern[ ] the sufficiency of the evidence and not the definition of proximate cause." But the issue in this case is whether the plaintiff presented sufficient evidence on the causation element of their claim to survive summary judgment. Thus, the majority's attempted distinction is unavailing.

N.W.2d 757, 762 (Minn.1998). This is such a case in my view.

The majority concludes that a genuine issue exists on the causation question because "the effects of intoxication are within common knowledge of lay people."[5] General knowledge about the effects of alcohol is not enough to answer the causation question in this case, because, as even the majority seems to concede, this is not a typical case. This is not case about driving conduct, such as the example the majority poses about an intoxicated driver running a red light because alcohol has impacted his driving ability. This case is also unlike *Kvanli v. Village of Watson*, 272 Minn. 481, 485, 139 N.W.2d 275, 278 (1965), where the jury, based on general knowledge about and its experience with the effects of alcohol, may have been able to infer that the reason an intoxicated person drove his car into a pedestrian was because his driving skills were impaired by alcohol. This case involves, as the majority notes, "unconventional facts," and raises a causation question that is, as the majority seems to concede, "more complicated than the more common drunk driver or bar fight scenarios" presented in our earlier cases.

This case is complicated because the evidence revealed during discovery shows that Riley had a long history of substance abuse, and that this abuse had taken its toll on his system before the night of his death. The psychologist appellants retained described Riley as someone who "had the classic traits of marijuana abusers, including * * * lack of concern for situations, with what appeared to be a very nonchalant attitude towards outcomes or consequences affecting his life." The record does not explain precisely how his history of substance abuse impacted Riley's decision-making ability, but the record does show that Riley was predisposed toward risky behavior. The record also shows that Riley was predisposed to attempt to evade police and that, prior to his death, Riley had even bragged about his willingness to jump into a river and his ability to swim away in order to keep from being arrested. Riley discussed this method of escape with his mother, according to the record, and she reported trying to dissuade her son from attempting such an escape should he find himself in that position because she told him it was impossible. Testimony from law enforcement also confirmed Riley's predisposition. One officer said, "when you dealt with [Riley], either he was running or he was fighting."

In addition, the psychologist appellants retained noted that Riley "appeared to

---

**5.** The majority cites two cases in support of its apparent conclusion that it is a matter of common knowledge that alcohol could have caused Riley to jump off the bridge into the river, *State v. Griese*, 565 N.W.2d 419 (Minn. 1997), and *Kvanli v. Village of Watson*, 272 Minn. 481, 139 N.W.2d 275 (1965). These cases are inapposite. *Griese* was a criminal case and presented the question of whether the defendant could offer expert witness testimony to support his contention that he was too intoxicated to premeditate the murder. 565 N.W.2d at 425. We held that "expert testimony on how this intoxication may have impaired a defendant's capacity to form specific intent is inadmissible diminished capacity testimony." *Id.* citing *State v. Provost*, 490 N.W.2d 93, 102 (Minn.1992). And in *Kvanli* "[e]xpert opinion was adduced to show that [the driver's consumption of alcohol] would result in a blood alcohol content of .12 percent at the time of the collision with resultant loss of judgment and perception." 272 Minn. at 485, 139 N.W.2d at 278. Neither case stands for the proposition that common knowledge about alcohol effects provides sufficient evidence of causation by itself to overcome a properly supported motion for summary judgment. Moreover, that common knowledge might be sufficient in the abstract does not answer the question in this case where, as explained below, there are additional complicating factors.

have a tendency to defy and flee from police when encountering them and, especially, if he anticipated arrest. This occurred clearly on one arrest where he attempted to run and, when stopped, fought and bit the arresting police officer." The psychologist also confirmed that shortly before his death, Riley told friends that he believed he could escape police by swimming across a river.[6]

This history makes this case more complicated than one where a jury's general knowledge about and experience with the effects of alcohol might provide a rational basis for deciding causation. In my view, whether someone with Riley's history made the decision that resulted in the loss of his life because he was predisposed toward risky behavior and running from police, or whether he made this decision because he was intoxicated, is beyond the common knowledge and understanding of lay people. The causation question presented in this case involves complicated mental processes of decision-making and, like other medical questions, requires expert testimony. Leaving this question to the jury unassisted by experts will lead only to speculation and conjecture, a result that is inconsistent with our precedent.

We have recognized that "[e]xpert opinion is required to prove causation if the issue is outside the realm of common knowledge." *Gross,* 578 N.W.2d at 762; *cf. Roche v. Lincoln Prop. Co.,* 175 Fed. App'x 597, 603 (4th Cir.2006) (affirming summary judgment of the plaintiff's personal injury negligence claim because without expert testimony the plaintiffs could not establish that mold in their apartment, as opposed to other potential causes, was

the proximate cause of their alleged respiratory problems); *Terry v. Caputo,* 115 Ohio St.3d 351, 875 N.E.2d 72, 79 (2007) (reinstating summary judgment because the claimant could not establish a prima facie case of toxic exposure without expert testimony to establish causation); *Creanga v. Jardal,* 185 N.J. 345, 886 A.2d 633, 639–40 (2005) (finding that plaintiff's expert testimony, which consisted of a differential diagnosis that eliminated other potential causes for premature labor, was admissible on element of proximate cause). This case presents precisely the kind of causation question we described in *Gross* where we held that expert testimony on causation was necessary for a plaintiff to survive summary judgment. 578 N.W.2d at 762. We said there that when

> a question involves obscure and abstruse medical factors such that the ordinary layman cannot reasonably possess well-founded knowledge of the matter and could only indulge in speculation in making a finding, there must be expert testimony, based upon an adequate factual foundation that the thing alleged to have caused the result not only might have caused it but in fact did cause it.

*Id.* (internal quotation omitted); *see also Saaf v. Duluth Police Pension Relief Ass'n,* 240 Minn. 60, 64–65, 59 N.W.2d 883, 886 (1953) (reversing judgment for plaintiffs where expert testimony did not "exclu[de] * * * other * * * possible causes" and did not provide a basis for the conclusion beyond "mere possibility, suspicion, or conjecture" that a blow to decedent's jaw was "an initiating and proximate cause of" his death).

---

**6.** The majority accuses me of misreading the psychologist's report and contends that Riley was only predisposed to engage in risky behavior if he was already intoxicated. The report does note that Riley's predisposition was exaggerated when he had been abusing alcohol and other mind-altering substances, but importantly, it does not limit his predisposition to evade police only to those occasions when he was intoxicated from his use of alcohol.

In *Gross,* the plaintiff sought damages because his horse, Traffic Secretary, was lame. 578 N.W.2d at 758. The question was whether Traffic Secretary's lameness was caused by an accident at the defendant's boarding facility or because of earlier, unrelated problems. *Id.* at 762 ("The lengthy medical history of Traffic Secretary's lameness before the [date of the] accident underscores the complex nature of Traffic Secretary's current lameness and the need for competent expert opinions on the causation of such lameness."). We held that expert testimony was required to sort out this causation question in order for the plaintiff to withstand a properly supported summary judgment motion. *Id.* Because the plaintiff offered no admissible expert testimony as to causation, we held that the defendant was entitled to summary judgment. *Id.*

Similarly in this case, appellants have provided no basis to determine whether someone with a predisposition toward risky behavior and a predisposition to evade police, like Riley, jumped into the river to avoid arrest because of his predisposition, because he was intoxicated, or because of some combination of the two. This question is beyond the realm of a lay person's understanding of the effects of alcohol and therefore requires expert testimony to sort out the potential causes. *See id.*

Appellants offered a report from a psychologist. Significantly for purposes of the element of causation, appellants' psychologist opined that Riley's "apparent recent fascination with the idea of being able to escape arrest by jumping into and swimming across a river *appeared to be a significant factor in his fatal decision on the night of his death.*" (Emphasis add-

ed.) But respondent had nothing to do with—and cannot be held responsible under the Dram Shop Act for injuries caused by—Riley's predisposition. Thus, consistent with the causation rule of *Alling,* respondent is entitled to summary judgment.[7]

But, the majority says, in addition to his opinion that Riley's predisposition was a "significant factor in his fatal decision," appellants' psychologist also opined that Riley's "alcohol inebriation played a substantial part in bringing about his decision to jump into the river, and that he almost certainly would not have done so if sober." The majority contends that these contradictory opinions—on the one hand, opining that Riley's predisposition was a significant factor in his decision to jump, and on the other hand, opining that Riley's intoxication played a substantial part in causing him to jump—provide sufficient evidence for appellants to survive summary judgment. The majority's conclusion is inconsistent with our precedent that holds that a party cannot create an issue for trial by offering contradictory evidence on an element of that party's claim. *See Hoover v. Norwest Private Mortgage Banking,* 632 N.W.2d 534, 541 n. 4 (Minn.2001) (noting that "affidavits that contradict earlier deposition testimony generally may not be used to create a genuine issue of fact").

In summary, this case is about what caused Riley to jump into the river on the night of his disappearance. If he jumped because he was intoxicated, respondent is responsible. But if Riley jumped because he thought it would provide him a means of escape from arrest, the Dram Shop Act does not make respondent liable for the damages resulting from that decision. Because appellants' expert offered no testi-

---

7. The majority seemingly suggests that I place too much reliance on the expert's report. I rely on it because it is in the record and respondent did not seek to strike it as speculative or otherwise inadmissible under Minn. R. Evid. 702.

mony that sorts out the potential causes, but simply identifies them, I would hold that appellants have not met their burden of proving that there is a genuine issue of material fact on the essential element of causation. *See Lubbers,* 539 N.W.2d at 402; *Saaf,* 240 Minn. at 64–65, 59 N.W.2d at 886; *Alling,* 156 Minn. at 63, 194 N.W. at 315. The district court therefore properly entered summary judgment in favor of respondent.